CITY OF DETROIT *v.* GEORGE.

1. TAXATION—EXEMPTION—PROPERTY OF UNIVERSITY OF MICHIGAN EXEMPT.

Where defendant leased certain lots in the city of Detroit owned by the University of Michigan, and erected thereon certain buildings which, under the terms of the lease, were to be the property of the University, a tax levied on said buildings as personal property and assessed against defendant was void, the property of the University being the property of the State and therefore exempt from taxation.

2. SAME—TAX ON BUILDING NOT TAX ON LEASEHOLD.

Where the record shows that the tax was against the building, it cannot properly be said to be a tax on defendant's leasehold interest.

3. SAME—CURATIVE STATUTES—JURISDICTION.

Plaintiff's contention that the curative statute (1 Comp. Laws 1915, § 4098) providing that "No tax assessed upon any property * * * shall be held void * * * on account of any irregularity in any assessment," etc., should be invoked to cure the defect and hold that there was really an assessment of defendant's leasehold interest cannot be sustained, since upon the record the board of assessors never attempted to assess defendant's leasehold rights and therefore never acquired jurisdiction, and curative statutes can never cure want of jurisdiction.

4. SAME—TAXABILITY OF LEASEHOLD INTEREST MOOT QUESTION.

The question of the taxability of defendant's leasehold interest, not being before the court, will not be considered.

Error to Wayne; Codd (George P.), J. Submitted January 6, 1921. (Docket No. 59.) Decided July 19, 1921.

Assumpsit by the city of Detroit against Edwin S. George for taxes. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for appellant.

*Clark, Emmons, Bryant, Klein & Brown,* for appellee.

*Cavanaugh & Burke,* for Regents of University of Michigan.

STONE, J. · This is an action of assumpsit brought by the city of Detroit against the defendant to recover certain personal taxes alleged to have been levied in the years 1912-1916, against defendant on a certain building upon land belonging to the University of Michigan, and leased to the defendant. There was a directed verdict followed by a judgment in favor of the defendant, and the plaintiff has brought the case here for review upon writ of error. The facts in the case were stipulated in writing by the attorneys for the · respective parties, and the stipulation was filed

---

This indenture, made this 15th day of November, A. D. 1911, between the regents of the University of Michigan, a body corporate, created by the Constitution of the State of Michigan (hereinafter called the lessor), and Edwin S. George, of the city of Detroit, Wayne county, Michigan (hereinafter called the lessee), witnesseth:

GRANT.

I. That the said lessor, for and in consideration of the rents hereinafter reserved, and of the covenants and agreements hereinafter expressed on the part of the lessee to be kept, performed and fulfilled, has demised and leased, and hereby does demise and lease unto the lessee all those certain premises situate and being in the city of Detroit, county of Wayne and State of Michigan, described as follows, to-wit:

Lot 'D' of the James A. Jones re-subdivision of lots one (1), two (2) and three (3) of the Ira Davis subdivision of Park lot sixty (60), according to the plat thereof as recorded in liber 7 of plats, page 49; and also lot twelve (12) of the subdivision of Park lots sixty-one (61) and sixty-two (62), according to the plat thereof as recorded in liber 1 of plats, page 128, Wayne county registry;

and read in evidence at the trial in the court below, without objection thereto by either party, which stipulation was as follows, viz.:

"This suit was brought by the city of Detroit to collect against the defendant certain taxes levied under the following circumstances:

"Prior to November 15, 1911, the University of Michigan became the owner through gift of the Honorable Levi L. Barbour of property on the west side of Woodward avenue between Canfield and Willis avenues in the city of Detroit, described as lot 'D' of the James A. Jones re-subdivision of lots one (1), and two (2) and three (3) of the Ira Davis subdivision of park lot sixty (60), according to the plat thereof as recorded in liber 7 of plats, page 49; and also lot twelve (12) of the subdivision of park lots sixty-one (61) and sixty-two (62) according to the plat thereof as recorded in liber 1 of plats, page 128, Wayne county registry; this property was located in the second ward in the city of Detroit, and was vacant, old dwellings which had occupied it having been torn

---

To have and to hold said premises with all the rights, privileges, easements, hereditaments and appurtenances thereto belonging unto the said lessee for and during the term of forty (40) years from and after the first day of January, in the year of our Lord one thousand and nine hundred and twelve, on the terms and conditions hereinafter specified, unless said term shall be sooner terminated as hereinafter provided.

Said lessor does covenant, bargain and agree to and with said lessee that at the time of the ensealing and delivery of these presents it is well seized of the above leased premises in fee simple, and that they are free from all incumbrances whatsoever, and that it will warrant and defend the same against all lawful claims whatsoever accruing against said property prior to January 1st, 1912, and also against all claims whatsoever accruing thereafter, by, through, or under the lessor.

RENTAL.

II. In consideration whereof, said lessee hereby covenants and agrees to pay the lessor as rental for said demised premises, at the office of the treasurer of the University of Michigan,

down.   With the property in this condition and producing no 'revenue for the University a lease was entered into between the University of Michigan as lessor and Edwin S. George as lessee, dated November 15, 1911, a copy of which is attached hereto.  In determining the amount of rent stipulated therein, both parties took into account the fact that the lessee is required by the terms of said lease to erect a building to cost not less than fifty thousand dollars (\$50,000), and that all buildings erected on the premises by the terms of the lease became the property of the University of Michigan; that the clause in the lease obligating lessee to pay all taxes, etc., was placed therein at the instance of the representative of the University of Michigan.

"All the rentals which the University of Michigan has received from this property have been devoted to the expenses and uses of the University of Michigan.

"During the months of February, March, April, May, June and July, 1912, at a cost of nineteen thousand two hundred and four and 26/100 dollars (\$19,204.26), Mr. George erected stores upon a portion

---

at Ann Arbor, Michigan, the sum of twenty-five hundred dollars (\$2,500) per annum for the first ten (10) years of said term, payable in equal monthly installments of two hundred and eight and 34/100ths dollars (\$208.34) each, in advance, on the first day of each month during said ten years.

A rental of thirty-nine hundred dollars (\$3,900) per annum for the second ten (10) years of said term, payable in equal monthly installments of three hundred and twenty-five dollars (\$325) each, in advance, on the first day of each month during the said second ten (10) years.

A rental of five thousand dollars (\$5,000) per annum for the third ten (10) years of said term, payable in equal monthly installments of four hundred and sixteen and 67/100ths dollars (\$416.67) each, in advance, on the first day of each month during said third ten (10) years.

A rental of six thousand dollars (\$6,000) per annum for the last ten (10) years of said term, payable in equal monthly installments of five hundred dollars (\$500) each, in advance, on the first day of each month during said last ten (10) years.

All of which rents shall be payable in lawful gold coin of the United States of America of the present standard of weight

of said premises, the stores being of steel, concrete and tile construction, and so constructed that they could be amplified, extended and increased as soon as conditions warranted. With the consent of the University, Edwin S. George has sold this lease, still, however, remaining personally liable on all obligations thereunder. Certain of the assignees secured from the University, upon delivering a bond for $150,000 conditioned that the buildings will be replaced, consent of the University to replace such buildings with a building of different type to be used for different purposes, namely, a theatre and café costing upwards of one hundred thousand dollars ($100,000); that the original buildings have been removed from the land and the new theatre building is now in process of construction. These buildings have at all times been insured for the benefit of the University.

"During the spring of 1912, the board of assessors of the city of Detroit indicated an intention to attempt to levy a tax against this property. They were promptly advised by Mr. George and his representatives that both the land and the buildings were the

and fineness, provided that acceptance by said lessor at any time of any portion of the whole of said rent in any other money than gold coin shall amount to a payment of the rental, to the amount so paid, but shall not be a waiver or release of the right of said lessor afterwards to insist upon and have all future payments of such rents made in such gold coin.

It is agreed that all rent that shall not be paid when due shall bear interest at the rate of six (6%) per cent. per annum from the date when the same is payable until the same shall be paid by said lessee.

### ERECTION OF NEW BUILDING AND INSURANCE.

III. The lessee further covenants and agrees that he will construct upon said premises at some time during the term of this lease a building, or buildings, whose cost shall be at least the sum of fifty thousand dollars ($50,000); such building or buildings may be erected at different times and in parcels as lessee may wish, which, however, shall be so designed and constructed that ultimately they will constitute one building; and said lessee agrees to furnish said lessor written evidence, satisfactory to it, that said building has cost at least that sum. And said lessee further covenants and agrees

property of the University of Michigan, and were not subject to taxation.    Notwithstanding that such notice was given to the said board of assessors, the said board caused to be entered in its field book for the second ward assessment reading as follows:

" 'Lot "D"——James A. Jones Sub'n.——$5,000.00.'

"That thereafter the said defendant duly and in accordance with the statute in such case made and provided and in accordance with the charter of the city of Detroit, presented to the common council and to the board of review, his petition for cancellation of said assessment, a copy whereof is hereto attached; that said defendant and his counsel appeared before the said board of review and presented to the said board the said lease and also presented the law governing the situation as contended for by them; and thereupon the taxing officials of the city of Detroit caused the entry in the said field book to be changed by striking out the figures '$5,000' and adding to the said entry in such manner that it read as follows:

that he will not use or permit said premises, or any part thereof to be used for any unlawful purpose, or for a saloon, or for any purpose which will constitute a nuisance.

The said lessee further covenants and agrees to keep all buildings erected upon said premises during the term of this lease, which can be damaged by fire, insured against loss by fire in companies satisfactory to said lessor, and in an amount equal at least to fifty (50%) per cent. of their value.

In the event that the building or buildings which may be erected upon said premises are destroyed, or partially destroyed by fire, the lessee covenants and agrees to re-construct or restore such building or buildings within a reasonable time, so that said building or buildings shall be in as good condition and of as good construction as they were before such fire; and as security for the performance of this covenant it is agreed that all fire insurance shall be payable to said lessor which may be used by said lessee in the reconstruction or restoration of said building or buildings, *Provided:* That in case said lessee shall not so reconstruct or restore said building or buildings within a reasonable time after such fire, then said lessor may reconstruct or restore said building or buildings and use all moneys received on fire insurance for the purpose of

" 'Lot "D"——James A. Jones Subdivision.

" 'Exempt ~~. . . . . . . . . . . . . . . . . . . . . . . .~~$5,000.00

[In the above line of the original there was a ruled line drawn through the words and figures.]

" 'Owners Names: University of Michigan—Edwin S. George.

" '$5,000.00 building assessed to Edw. S. George, 1st Ward.'

"That thereafter the said board of review denied the petition of said defendant and directed an assessment of a personal tax against Edwin S. George, the defendant herein, to be placed upon the assessment rolls of the first ward in the city of Detroit (in which ward said George resided) and levied taxes against the said defendant personally for the years 1912, 1913, 1914, 1915 and 1916; that each of said taxes was based by the assessing officials upon the claim that said buildings could be assessed against said George as personal property.

"That the said defendant has at all times asserted that said taxes are illegal and invalid, and has refused to recognize the same as a tax against him, or against said buildings or property, and has refused to pay the same, or any part thereof for any year.

defraying the cost of such reconstruction or restoration, and the balance, if any, shall go to said lessee.

The lessee further covenants and agrees that all boilers, elevators, or other machinery in the building or buildings which may be erected on said premises shall be insured in the name of said lessee against accident in some responsible casualty company or companies, to be approved by said lessor, and in case of damage or destruction of said building or buildings by casualty or accident to said boilers, elevators or machinery, or in case of damage by casualty to said boilers, elevators and machinery, all provisions, conditions, covenants and agreements of every nature herein contained, relating to damage or destruction by fire, shall apply fully in like manner to any damage or destruction by casualty or accident; and said lessee further covenants and agrees that he will save said lessor harmless from all damage on account of injuries to person, life or property in, on or about said building or buildings by reason of such damage or destruction by casualty or accident to such boilers, elevators and machinery, or on account of fire, or any other cause beyond the control of said lessor.

And said lessee further covenants and agrees that in case

"That if said taxes are a proper charge against the said buildings, said property, or said George, then the amounts thereof would be as follows, the same being computed to September 1, 1920:

| Year. | Tax. | Interest Added. | Total. |
|-------|------|-----------------|--------|
| 1912 | $99.66 | $86.94 | $186.60 |
| 1913 | 202.92 | 155.56 | 358.48 |
| 1914 | 196.97 | 130.29 | 327.26 |
| 1915 | 236.41 | 131.06 | 367.47 |
| 1916 | 185.20 | 83.04 | 268.24 |

Total  -  $1,508.05"

The above stipulation of facts was duly signed by attorneys for the respective parties.

Later there was filed in this court the following additional stipulation of counsel:

"In addition to the facts as heretofore stipulated between the parties, it is further hereby stipulated that from the years 1912 to 1916 the defendant, Edwin S. George, was not a resident of the city of Detroit, but was a resident of Bloomfield township, Oakland county,

the lessor shall, without any neglect or fault on its part, be made a party to any litigation commenced by or against the said lessee, then the lessee shall pay all reasonable costs and attorney fees incurred or imposed upon the lessor hereto.

CARE OF PREMISES, REPAIRS, ETC.

IV. Said lessee further covenants and agrees that he will keep all buildings erected on said premises in good repair and will keep the sidewalks on and adjoining said premises in good repair and free from snow, ice and other obstructions; and that all health and police regulations shall in all respects and at all times be fully complied with by the said lessee, and the said lessor kept harmless and indemnified at all times against any loss, damage, cost or expense by reason of the failure so to do in any respect, or by reason of any accident, loss or damage resulting to persons or property by reason of any use which may be made of said premises, or by reason of any act or thing done upon said premises by or through the act or negligence of said lessee or his assigns, or any of his agents or representatives.

and that he maintained an office for the transaction of his business in the first ward of the city of Detroit."

In our view of the case it will not be necessary to consider many of the questions raised by the assignments of error and discussed by counsel.    We are impressed with the claim of the defendant "that upon the pleadings and proofs as stipulated filed herein the plaintiff is not entitled to recover."    We are of the opinion that upon this record it must be said that the tax assessed was a tax on the building, as personal property, the owners being the University of Michigan, and Edwin S. George; and it cannot properly be said to be a tax upon a leasehold interest.

In its charge directing a verdict for the defendant the trial court said:

"It is my opinion that the ownership of the buildings is the main question in this case.    It has been held that property held by the Regents of the University of

TAXES AND PUBLIC CHARGES.

V. Said lessee further agrees to pay, within six months after they are payable, during the entire term of this lease, all water rates, and all lawful taxes and assessments, general and special, extraordinary as well as ordinary, and all public charges of every kind and description that may be levied or assessed or become due upon or against said premises and upon any building or buildings which may be erected thereon, as hereinbefore provided, or upon any building, addition or improvement of any kind which may at any time during said term be placed thereon, and also all such taxes, assessments or public charges as shall or may become due or be levied or assessed upon the leasehold interest in said property vested in said lessee or in said lessor by this indenture; and the said lessee hereby agrees that he will procure at the time of payment and forthwith deliver to the said lessor, either original or duplicate receipts of the proper officers for the payment of all such taxes, assessments or charges.

In case of the failure, neglect or refusal of the lessee' to pay any such taxes or assessments or other charges within six months after the same shall become due and payable, or in the case of the sale of said property, or any part thereof for the

Michigan in their corporate capacity is the public property of the State, held by the corporation in trust for the purposes to which it was devoted, and is exempt from taxation. *Auditor General* v. *Regents*, 83 Mich. 467 (10 L. R. A. 376).

"It is expressly stipulated in the lease that the buildings shall belong to the University, and I fail to see any ownership in them in the defendant George. The only interest that he can possibly have is a leasehold interest. The buildings, both by the express terms of the lease and under the law, are part of the freehold and the property of the University. As such they are exempt from taxation, and it becomes my duty to direct a verdict in favor of the defendant."

We think that this charge was justified by the record.

It is very plain from the stipulation of facts that the board of assessors first attempted to assess the land itself for $5,000. The board of review abandoned this step by reason of section 4001, 1 Comp. Laws 1915,

non-payment of any of such charges, taxes or assessments, then and in that case, this lease shall, at the option of said lessor, cease and determine; or, in case of such failure, neglect or refusal, said lessor may, at its option, elect to pay such unpaid charges, taxes or assessments or to buy any tax titles outstanding upon said premises, or any part thereof, by reason of the default of said lessee in the payment thereof, and may treat the sum or sums so paid as so much additional rent due forthwith and have the same remedy or remedies, for the nonpayment thereof as are given it by law or by the terms of this lease for the non-payment of the rents hereinbefore reserved.

ASSIGNMENT.

VI. The said lessee further covenants and agrees not to sell or assign this lease, or any interest therein, without the written assent of the lessor, and such assent shall not release the lessee from any of his obligations hereunder.

The said lessee further covenants and agrees that said written assent by the lessor shall operate as a license to assign only to the party or parties named in the said written assent and that said written assent shall in no way impair the obligations of

and the decision above referred to. Said board then caused its field book to be changed to read, as shown in the record, "$5,000 building assessed to Edw. S. George, 1st ward."

The assessment roll is not before us, but it is fair to infer that it followed the field book. Then follows the following significant language of the stipulation, which we repeat:

"That thereafter the said board of review denied the petition of said defendant and directed an assessment of a personal tax against Edwin S. George, the defendant herein, to be placed upon the assessment rolls of the first ward in the city of Detroit (in which ward said George resided) and levied taxes against the said defendant personally for the years 1912, 1913, 1914, 1915 and 1916; that each of said taxes was based by the assessing officials upon the claim that said buildings could be assessed against said George as personal property."

the above covenant, which shall remain in full force and operation.

It is not intended to hereby limit or abridge the right of said lessee to sub-let said premises, or any part thereof, which privilege he has, subject to the limitations and conditions herein contained.

It is further agreed that the joint signature of the lessor and lessee shall be required in all cases to an instrument in writing, whereby any person other than said lessee may directly or indirectly acquire the right to use or occupy any portion of any street or alley upon which said property abuts.

FORFEITURE.

VII. This lease is upon express condition that said lessee shall punctually perform all of his covenants and agreements herein set forth; that time is of the essence of this contract; that if said rents, or any part thereof shall be in arrears and unpaid for a period of thirty (30) days after they are payable, as above provided, or, if said taxes, and insurance premiums, or any part thereof, shall be in arrears and unpaid for a period of six (6) months after the same are payable, or if default be made in any of the other covenants of this lease, and such default continue for sixty (60) days after notice

It will be noted that neither of said boards attempted to assess a leasehold right or interest. The defendant therefore had no opportunity to meet the question or present the claim as to whether his leasehold interest was lawfully taxable, and, if so, what its value was. It is clear that if the question of a leasehold interest had been presented it would have been competent for the defendant to have presented facts as to the value of the leasehold interest. The valuation, however, was placed upon the building as appears from the field book entry.

It is the claim of counsel for the city that there was here really an assessment of the leasehold interest of the defendant; and he invokes the aid of the curative statute, section 4098, 1 Comp. Laws 1915, which provides that:

"No tax assessed upon any property     *     *     *
shall be held invalid by any court of this State on ac-

___

is given by the lessor to the lessee, then it shall and may be lawful for the lessor to re-enter into and repossess the said premises, and the said lessee and each and every other occupant to remove and put out.

Said lessor may bring suit for and collect all sums which may have accrued in its favor under this lease, and all damages it may have sustained on account of the breach of this lease by said lessee. But said lessee may, at any time before the expiration of said sixty (60) days, pay all moneys due and make all repairs and do all things mentioned in and required to be done by the notice given by the lessor to the lessee, *Provided*, That in case any rent shall become due under this lease, demand for the payment of such rent, or for the possession of such premises is hereby waived, according to the provisions of section 11164 of the Compiled Laws of 1897.

It is further covenanted and agreed that all buildings, fixtures and improvements situate on said premises shall belong to said lessor and that said lessee hereby expressly covenants and agrees that upon the termination of this lease for any cause aforesaid, he will at once surrender and deliver up the above described premises, together with all the improvements thereon, to the lessor.

count of any irregularity in any assessment,   \*   \*   \*
or on account of the property having been assessed
without the name of the owner, or in the name of
any person other than the owner, or on account of any
other irregularity, informality, or omission, or want
of any matter of form or substance in any proceed-
ing that does not prejudice the property rights of the
person whose property is taxed."   \*   \*   \*

In answer to this claim, it may be said that neither
of said boards made any attempt to tax any leasehold,
and the record is silent upon that subject.   It may
be said to be an afterthought of counsel.

It should be further said that this matter goes to
the jurisdiction of the boards; and it has been in-
variably held that curative statutes can never cure
want of jurisdiction.   This court has repeatedly held
that the curative provisions of the statute quoted do
not relieve against defects which go to the jurisdiction
of the body authorizing the levy.   The question here
is one of power to act.   That the property rights of
the defendant are here prejudiced, cannot, we think,

---

VIII. All notices required by this lease shall be in writing,
and shall specify the breach of covenants and in what particu-
lar default is claimed to have been made, and may be served
either personally or by mailing such notice to the party to be
served at his post-office address in Detroit, Michigan, or at such
address as shall have been furnished by the lessee to the lessor
in writing.   If no service can be made upon said lessee in the
manner aforesaid, such notice may be served by posting same
in some conspicuous place upon said premises.

It is further agreed that no waiver of a breach in any of the
covenants of this lease shall be construed to be a waiver of
any succeeding breach of the same or any other covenant.

POSSESSION.

IX. Said lessor covenants and agrees that the said lessee on
performing all of the covenants and agreements aforesaid on
his part, shall and may at all times during said term, peace-
fully, quietly have, hold and enjoy the said demised premises
for and during the term hereby granted.

be questioned.    The following authorities bear upon the subject of curative statutes, and especially upon the statute quoted: *Hart* v. *Henderson,* 17 Mich. 222; *Township of Caledonia* v. *Rose,* 94 Mich. 216; *Auditor General* v. *Keweenaw Ass'n,* 107 Mich. 405; *Hamilton & Merryman Co.* v. *Township of L'Anse,* 107 Mich. 419; *Auditor General* v. *Railway Co.,* 116 Mich. 122; *Auditor General* v. *Sparrow,* 116 Mich. 574, 591; *Auditor General* v. *Stone,* 190 Mich. 93, 98; *Rapid Railway Co.* v. *Schroeder,* 190 Mich. 684, 689.

In all of the cases cited by plaintiff's counsel upon this subject the right property was assessed.    Here the defendant was assessed as the owner of this building.

*City of Menominee* v. *Lumber Co.,* 119 Mich. 201.    In that case there was a wrong name, but the right property was assessed of which the defendant had notice.

It must be said that the assessment here was upon the basis of the defendant's ownership of the build-

---

TO EXTEND TO HEIRS.

X. It is further agreed that all of the covenants, agreements, conditions and undertakings herein contained shall extend to and be binding upon the representatives, heirs, executors, administrators, successors and assigns of the respective parties hereto, as if they were in all cases named, and these covenants shall be construed as covenants running with the land.

In witness whereof, the said lessor has caused its corporate seal to be hereto affixed, and these presents to be subscribed by its president and secretary; and the said lessee has hereunto set his hand and seal the day and year first above written.

Signed, sealed and delivered in presence of:

    BEULAH B. DAVIS, GEORGIE E. JACKSON, HAROLD H. EMMONS,
    A. G. FINLEY.

            THE REGENTS OF THE UNIVERSITY OF MICHIGAN.

                    HARRY B. HUTCHINS, President.
                    SHIRLEY W. SMITH, Secretary.
                    EDW. S. GEORGE (L. S.)

(The foregoing instrument was duly signed and acknowledged on November 15, 1911.)

ing.   It was exempt from taxation.   The idea of an assessment of a leasehold interest was never contemplated by either board.   This, in our opinion, requires an affirmance of the judgment.   We decline to pass upon the questions of the taxability of the leasehold interest of defendant, and if taxable where, because those questions are not before us.   When steps are taken to assess such interest, and the question is properly before us, we will consider it.   So far the defendant has had no opportunity to meet the question before the assessing officers, and the question is a moot one.

In *Johnson* v. *Burghorn*, 212 Mich. 19, 27, 31, we declined to pass upon the questions of shooting and fishing as not being involved in the case, and as presenting a moot question.   For the same reason we decline to pass upon the question of leasehold interest.

The lease in question appears in the margin.

The judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.