CITY OF ANN ARBOR v THE UNIVERSITY CELLAR, INC.

1. TAXATION—TAX COMMISSION—DECISIONS—REVIEW—CONSTITU-
   TIONAL LAW.

   The power of the Court of Appeals to review decisions of the
   State Tax Commission is very limited; no appeal may be taken
   to any court from any final agency provided for the administra-
   tion of property tax laws from any decision relating to valua-
   tion or allocation in the absence of fraud, error of law, or the
   adoption of wrong principles (Const 1963, art 6, § 28).

2. TAXATION—EXEMPTIONS—EDUCATIONAL ORGANIZATIONS—NON-
   PROFIT—CONSTITUTIONAL LAW.

   Property owned and occupied by nonprofit educational organiza-
   tions and used exclusively for educational purposes as defined
   by law shall be exempt from real and personal property taxes
   (Const 1963, art 9, § 4).

3. TAXATION—EXEMPTIONS—PERSONAL PROPERTY—CHARITABLE—EDU-
   CATIONAL—SCIENTIFIC—STATUTES.

   The personal property of charitable, educational and scientific
   institutions incorporated under the laws of this state shall be
   exempt from taxation (MCLA 211.9).

4. TAXATION—EXEMPTIONS—CORPORATIONS—PERSONAL PROPERTY—
   UNIVERSITIES—STATUTES.

   A corporation's personal property comes within the personal
   property tax exemption statute where a university establishes
   the corporation as one wholly owned and controlled by the
   university, and does so in such a way that the personal prop-
   erty of the corporation is in fact for all intents and purposes
   the personal property of the university (MCLA 211.9).

5. TAXATION—EXEMPTIONS—PERSONAL PROPERTY—UNIVERSITIES—
   STATE PROPERTY.

   The lands, buildings and equipment under the management,
   supervision and control of the board of regents of the Univer-

REFERENCE FOR POINTS IN HEADNOTES
[1–6] 71 Am Jur 2d, State and Local Taxes §§ 382, 383.

sity of Michigan are public property owned by the State of
Michigan, and exempt from property tax.

6. TAXATION—EXEMPTIONS—PERSONAL PROPERTY—UNIVERSITIES—
   NONPROFIT CORPORATIONS.
   A state university will not be denied its exemption from personal
   property taxation merely because it chose to do work through a
   separate nonprofit corporation rather than in its own name.

Appeal from the State Tax Commission. Submit-
ted October 15, 1975, at Lansing. (Docket No.
21526.) Decided November 13, 1975. Leave to ap-
peal applied for.

Petition by the City of Ann Arbor to determine
whether a tax exemption for property owned by
defendant The University Cellar, Inc. was justified.
Order finding the property not tax-exempt issued
by State Tax Commission. Defendant appeals by
leave granted. Reversed.

*R. Bruce Laidlaw,* Chief Assistant City Attorney,
for plaintiff.

*Forsythe, Campbell, Vandenberg, Clevenger &
Bishop, P. C.,* for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK,
JR. and M. J. KELLY, JJ.

McGREGOR, P. J. On May 31, 1972, the City of
Ann Arbor petitioned the Michigan State Tax
Commission to determine whether, pursuant to
MCLA 211.154; MSA 7.211, justification existed for
the exemption from taxation of the personal prop-
erty owned by the defendant, The University Cel-
lar, Inc. A stipulation of facts was entered into and
filed with the state tax commission on March 14,
1973. On the same date, the commission held a
hearing, at which time the stipulation was ac-
cepted and briefs were submitted. The commission,

on August 19, 1973, entered an order finding that the personal property of the defendant was not tax-exempt. From this order, defendant sought leave to appeal, which was granted.

The parties agree, as they did before the commission, that the defendant corporation is a nonprofit, nonstock corporation, formed under the laws of the state of Michigan. It was incorporated under its former name of The Board for the Student Bookstore, Inc. and articles of incorporation were filed in April, 1970. The articles were amended in September, 1970, to reflect the defendant's present name. The articles of incorporation state the purpose of the bookstore as follows:

"[T]o maintain and operate at The University of Michigan a store to sell books and supplies to bona fide students, faculty and employees, in order to promote the educational and economic welfare of students, faculty and employees of The University of Michigan;

"[A]nd to receive funds by way of grant, gift, bequest, donation, dues, fees, deposits, or otherwise for these purposes."

It appears from the record that the University of Michigan, the University's Student Government Council (with certain powers delegated to it by the university's Board of Regents), and the Faculty Assembly (also recognized by the Board of Regents and a duly constituted representative body of the university's faculty), proposed that the Board of Regents provide for, and finance the establishment of a campus bookstore. The Board of Regents, in 1969, approved a general plan for the bookstore, subject to the approval of the university president, and transferred $100,000 to defendant University Cellar as contributed capital. They also authorized the imposition of a $5 deposit requirement upon

all students for the bookstore's benefit; said deposits being returnable to the students, upon request, within one year of their leaving the university. Unclaimed deposits would become contributed capital. The regents designated that their liability would be limited to the amount of their capital contribution and the articles of incorporation provided that the regents had the power to terminate at any time the store's right to operate on the school's campus and to liquidate the corporation's assets. Upon dissolution of the corporation or cessation of its existence, voluntary or otherwise, the articles provided that the net assets of the corporation would be distributed to the university's Board of Regents. The articles of incorporation and the bylaws further provided for a board of directors of 10 members, which would be composed of 6 students selected by the Student Government Council, three faculty members selected by the Faculty Assembly, and one administrative member selected by the university president. Additionally, the bylaws provided that this board should manage the affairs, funds and records of the corporation.

The bookstore is located on the University of Michigan campus in the Michigan Union, under a lease agreement, with the Union as lessor.

At the outset, we note that this Court's power to review decisions of the state tax commission is very limited. Article 6, § 28, of the Michigan Constitution of 1963 provides in part:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

Thus, on this appeal, we may properly consider only questions of law and not factual determinations made by the state tax commission.

The first issue which we must determine is whether the constitutional and statutory language applicable to property tax exemptions can accommodate an exemption for property held by a corporation which is owned by and within the control of a bona fide educational institution.

Article 9, § 4 of the Michigan Constitution of 1963 provides in part as follows:

"Property owned and occupied by non-profit * * * educational organizations and used exclusively for * * * educational purposes, as defined by law, shall be exempt from real and personal property taxes."

Additionally, MCLA 211.9; MSA 7.9, states in part:

"The following personal property shall be exempt from taxation:

"(a) The personal property of charitable, educational, scientific institutions, incorporated under the laws of this state."

Plaintiff cites the case of *Detroit v Detroit Commercial College,* 322 Mich 142; 33 NW2d 737 (1948), for the proposition that exemptions must be strictly construed, and may not be inferred unless the intention to make an exception is expressed in clear and unambiguous terms. The plaintiff argues that, since the statute exempts only the personal property of the incorporated institution, the statute cannot be construed to include the property of another corporation, even if that corporation is wholly owned and controlled by the institution.

The defendant, on the other hand, argues that

the cases of *H K Ferguson v Department of Revenue,* 377 Mich 388; 140 NW2d 469 (1966), and *Knapp-Stiles v Department of Revenue,* 370 Mich 629; 122 NW2d 642 (1963), stand for the proposition that the substance of the factual arrangement is to be the guiding principle in determining ownership and tax exemptions.

The *Knapp-Stiles* case is especially noteworthy. In that case, the Court held that sales by a private contractor to what was a private corporation, privately capitalized by that same contractor, were exempt from sales tax because the private corporation was determined to be an instrumentality of the United States Government. That corporation had been created to allow the United States Government to carry out extensive housing construction without including its costs in the Federal fiscal budget, thus avoiding violation of its direct debt limit. After listing the factors which led it to determine that the corporation was in substance an instrumentality of the government, including the fact that its stock and letters of resignation from its officers were in escrow for delivery to the United States Government upon completion of the project, the Court stated that corporate veils should be pierced to permit judicial discernment of the true situation. Since the corporation was in fact an instrumentality of the United States Government, the sales tax exemption was available to it.

The plaintiff city contends that these cases are distinguishable from the instant case in that the statutes there involved specifically allowed exemptions for instrumentalities of the Government, whereas here, the statute refers only to the institutions themselves, and makes no reference whatsoever to their instrumentalities.

However, we believe that the reasoning of these cases, which looks to the factual substance of the arrangement rather than its form to determine the real owner of the property, can also be applied to the personal property tax exemption. Although the language of the personal property tax exemption does not specifically refer to instrumentalities of the state, that section does refer to the personal property of educational institutions. Where a university establishes a corporation which is wholly owned and controlled by the university, and does so in such a way that the personal property of the corporation is, in fact, for all intents and purposes the personal property of the university, we believe that such property should come within the tax exemption.

We reach this result for two reasons. First, it is established in Michigan that:

"The lands, buildings and equipment under the management, supervision and control of the board of regents of the university are public property, owned by the State of Michigan. Such public property belonging to the State is exempt from property tax. CL 1929, § 3395, as last amended by PA 1946 (1st Ex Sess), No. 24 (Stat Ann 1947 Cum Supp § 7.7). *Auditor General v Regents of the University of Michigan,* 83 Mich 467; 47 NW 440 *(10 LRA 376)* (1890); *City of Detroit v George,* 214 Mich 664; 183 NW 789 (1921); *People, for use of Regents of the University of Michigan v Brooks,* 224 Mich 45; 194 NW 602 (1923); *James A. Welch Co, Inc, v State Land Office Board,* 295 Mich 85; 294 NW 377 (1940)." *Rockwell Co v Romulus Township,* 365 Mich 632, 640; 114 NW2d 166 (1962).

Secondly, in *City of Ann Arbor v State Tax Commission,* 393 Mich 52; 223 NW2d 1 (1974), the state tax commission determined that the University of Michigan Union, the University of Michi-

gan Lawyer's Club, and the Board in Control of Intercollegiate Athletics were exempt from property taxation, and this Court affirmed that determination. These three organizations, like the present defendant, were also corporations established by the Regents of the University of Michigan. In reversing the case, our Supreme Court relied upon other grounds and did not express any opinion as to the substantive issues raised by the tax exemptions therein granted. As a result, our Court's affirmance on this issue was left intact.

Having established that it is possible for a university to establish a tax-exempt corporation, we are presented with the second issue of whether the University of Michigan, in setting up and maintaining The University Cellar, Inc., retained sufficient ownership and control over that corporation so that its property can be said, as a matter of law,[1] to be the property of the University of Michigan.

While no case has been found directly on point in this jurisdiction, other jurisdictions have examined similar arrangements. In *District of Columbia v Catholic Education Press, Inc,* 91 US App DC 126; 199 F2d 176 (1952), the Catholic Education Press, a separate corporation created by the Catholic University of America, was deemed to be part of the university. Likewise, in *State v Bareis,* 257 Wis 497; 44 NW2d 259 (1950), the Wisconsin Supreme Court held that the Wisconsin University Building Corporation, a nonstock, nonprofit corporation which owned property purchased and held in accordance with requests by the Regents of the University of Wisconsin, was entitled to a tax

---

[1] Where the facts are not in dispute, the question of whether the property is owned by the educational institution so as to be exempt from taxation is one of law. *See Webb Academy v City of Grand Rapids,* 209 Mich 523; 177 NW 290 (1920).

exemption. On the other hand, in *Stanford University Book Store v Helvering,* 65 US App DC 364; 83 F2d 710 (1936), it was held that the association organized for the purpose of operating the bookstore was not sufficiently connected with the university to warrant a tax exemption.

In each of these cases, the courts have looked at the totality of the circumstances to determine whether the university retained sufficient ownership and control over the satellite corporation to justify the tax exemption. Important circumstances considered by these courts were (1) the makeup of the corporation's managing board and the method of its selection, (2) the initial and continuing funding of the corporation, (3) the university's degree of control over the operations and the existence of the corporation, (4) the university's responsibility for the corporation's liabilities, (5) the stated purpose of the corporation as contained in its articles of incorporation, and (6) the location of the corporation's premises.

Judging the present case in the light of all the attendant circumstances, we conclude that the University of Michigan does, in fact, own and control the defendant corporation and, consequently, the personal property of the defendant is exempt from taxation. While the plaintiff points out several areas in which the corporation is independent to some degree, we, on balance, find the contrary conclusion to be inescapable.

The record makes clear that the university's Board of Regents alone furnished the initial capital for the defendant corporation with the university's student body thereafter becoming non-interest-bearing creditors. The Board of Regents has control over all of the assets of the defendant corporation in that it has the power to terminate and liquidate the corporation and to secure unto itself all distributable assets. The university (con-

sisting of administration, faculty and students) is alone represented on the defendant's board of directors, as the board is selected only by institutional bodies officially recognized by the regents as integral parts of the university. This board operates the bookstore on a break-even basis, according to guidelines officially imposed by the regents. The defendant bookstore is located on the university's premises and occupies said premises on a lease basis. Furthermore, the bookstore clearly appears to be in furtherance of the university's educational program inasmuch as it caters primarily or exclusively to those connected with the school either in administrative, faculty or student positions. And, finally, the only apparent purpose of the separate, nonprofit corporation form of arrangement is the nontax purpose of limiting the regents' otherwise limited liability to its initial capital contribution of $100,000.

· The concluding paragraph of *Catholic Education Press, supra,* is applicable to the present case, as it states:

"If the Catholic University of America, in its own name, should engage in activities identical to those of its subsidiary, the Catholic Education Press, we suppose its right to exemption from taxation on the personal property used in such activities would not be questioned. We see no reason for denying the exemption to the university merely because it chose to do its work through a separate non-profit corporation."

The same situation is present here. The university clearly could conduct such a business in its own right. The fact that the regents have seen fit to set up a satellite corporation, instead of a division within the university itself, should not deprive the university of its tax exemption.

Reversed. No costs, a public question being involved.