CITY OF IRONWOOD v GOGEBIC COUNTY BOARD OF
COMMISSIONERS

Docket No. 77-814. Submitted May 2, 1978, at Marquette.—Decided
July 5, 1978.

In February, 1976, the City of Ironwood underwent a reassess-
ment of real property for tax valuation purposes. The Board of
Review met in accordance with a statute requiring such a
meeting and received well over a thousand assessment appeals.
As a result the Board of Review was unable to timely complete
its work but finally reduced the assessed valuation on over half
of the cases appealed, and also in some cases which were not
appealed. The County Board of Commissioners of Gogebic
County ignored the figures arrived at by the Board of Review
and sent to the State Tax Commission the revised figure of the
county equalization department. The City of Ironwood applied
to the State Tax Tribunal alleging that the assessment figure
submitted by the county was too high. The Townships of
Ironwood, Bessemer, Marenisco, Watersmeet, Wakefield and
Erwin intervened. The Tax Tribunal held that the board of
commissioners arbitrarily rejected the adjustments of the
Board of Review and granted relief in the form of accepting the
Board of Review's assessment figure and apportioning the
difference between that amount and the figure sent to the State
Tax Commission by the board of commissioners among all the
governmental units in the county. The intervening townships
appeal alleging error as a matter of law in holding that the
board of commissioners had arbitrarily and improperly rejected
the adjustments in assessments made by the Board of Review,
and that any supplement to the equalized values of the other
governmental units in the county was unconstitutional. *Held:*

1. The Court of Appeals is bound by the factual determina-
tions of the State Tax Tribunal, which did not err as a matter
of law in holding the commissioners' rejection of the Board of
Review's figures to be arbitrary where the Board began deliber-

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 72 Am Jur 2d, State and Local Taxation §§ 787, 799–801.

ations to equalize estimated assessment values two weeks prior to receipt of the report from the Board of Review.

2. Apportioning the difference in assessment values to all other governmental units in the county was constitutional in view of the adoption by Michigan Courts of the primacy of equal treatment over strict adherence to the 50 percent cash value standard.

Affirmed.

1. TAXATION—STATE TAX TRIBUNAL—DECISIONS—REVIEW.

The Court of Appeals is bound by the factual determinations of the State Tax Tribunal (Const 1963, art 6, § 28, MCL 205.753[1]; MSA 7.650[53]).

2. TAXATION—CITY BOARD OF REVIEW—REVIEW OF ASSESSMENT OF INDIVIDUAL PARCELS.

The Board of Review of a city has the power to review assessments of individual parcels of property (MCL 211.29; MSA 7.29).

3. TAXATION—CITY BOARD OF REVIEW—REVIEW OF ASSESSMENT OF INDIVIDUAL PARCELS.

Adjustments of assessments of individual parcels of property by a city Board of Review need not be done in accordance with any set formula so long as they are not done arbitrarily.

4. TAXATION—ASSESSMENTS—REVIEW OF ASSESSMENTS—CITY BOARD OF REVIEW—COUNTY BOARD OF COMMISSIONERS—STATE TAX TRIBUNAL—CONSTITUTIONAL LAW.

Arbitrary rejection by a county board of commissioners of a city Board of Review's assessed valuation figures requires the Tax Tribunal to accept the Board of Review's figures and allocate the difference between the Review Board's figure and the commissioners' figure to all governmental units in the county; such action does not violate the constitutional section prohibiting real property from being taxed at greater than 50 percent of true cash value (Const 1963, art 9, § 3).

*David E. McDonald,* City Attorney, for the plaintiff.

*Weis, Cossi & Slade, P. C.,* for intervening defendants.

Before: V. J. Brennan, P. J., and R. B. Burns and M. J. Kelly, JJ.

V. J. Brennan, P. J. Intervening defendants Gogebic County township units appeal from the Michigan State Tax Tribunal judgment rejecting the Gogebic County Board of Commissioners proposed figure for equalization of real property in the City of Ironwood. The Tribunal's judgment resulted from their determination that the county commissioners arbitrarily ignored the reassessment of real property values made by the City of Ironwood Board of Review. The Tribunal thus adjusted the assessed value figure for City of Ironwood real property downward to conform to the review board figure and distributed the resulting amount of overvaluation in the county board's assessment to all units located within the county. Appeal from the Tax Tribunal is a matter of right. MCL 205.753(1); MSA 7.650(53).

In early 1960, Gogebic County was reappraised by private appraisers and its valuation figures accepted by the City of Ironwood. In 1968, the county established its tax department and the reappraisal of the entire county was commenced, with the City of Ironwood the last political subdivision so appraised. The reappraisal of property in the City of Ironwood commenced in 1973 and was not completed until late February, 1976. This appraisal was used by the city assessor in establishing the assessment roll.

The assessment roll was completed by the first Monday in March, as required by MCL 211.24; MSA 7.24, and the Board of Review for the City of Ironwood met that same day, in accordance with MCL 211.29; MSA 7.29. Apparently, the Board of Review was flooded with assessment reviews. The board received assessment appeals from 1,022 per-

sons making personal appearances. Additional appeals from 61 persons were received by mail. As a result of this large number of appeals, the Board of Review was unable to complete its work by April 5, 1976, as required by MCL 211.30a; MSA 7.30(1).

During its consideration of these appeals, the Board of Review at one time attempted to set aside the entire assessment roll and rely upon the roll used in 1975 with adjustments made for 1976. However, the State Tax Commission ordered the Board of Review to consider the 1976 roll and extended the board completion date to April 16, 1976. The Board of Review ultimately completed its task on May 18, 1976. Part of this delay was due to a suit filed by aggrieved taxpayers challenging the 1976 assessment roll. The board ultimately reduced assessed valuation on 577 properties of the 1,083 cases under consideration. Some additional reductions were made for properties belonging to persons who had never appealed their assessed valuation. The board's final assessed value for the real property in the City of Ironwood was $24,483,300, being a reduction of $1,225,200 from the city assessor's figure of $25,708,500.

On May 3, 1976, prior to the completion of the Board of Review's task, the County Board of Commissioners met, as required by MCL 211.34; MSA 7.52, to examine the various assessment rolls for purposes of equalization. Since the Board of Review for the City of Ironwood had not completed its task, the County Equalization Department sent an estimated county equalized valuation from the City of Ironwood to the State Tax Commission. The estimate of real property in the City of Ironwood was $24,900,508. The County Board of Commissioners rejected this figure.

On May 5, 1975, the County Equalization Department revised its estimate for real property in the City of Ironwood to $25,656,700 and sent this figure to the State Tax Commission. On May 19, 1976, this figure was also rejected by the Board of Commissioners. However, on June 16, 1976, this estimate was resubmitted and accepted by the Board of Commissioners, even though substantially higher than the figure submitted by the City of Ironwood Board of Review.

On June 18, 1976, the City of Ironwood filed an application with the State Tax Tribunal, alleging that the figure adopted for the equalized value of all property in the City of Ironwood was too high. Although both real and personal property values were involved at that stage of the proceedings, the question of personal property valuation is no longer involved in this appeal. A preliminary hearing was held on August 6, 1976, and a full hearing was subsequently ordered. On January 7, 1977, intervening defendants filed a motion to intervene which was subsequently granted.

The State Tax Tribunal heard the case on January 10–14, 1977, and issued its decision on February 25, 1977. In its opinion, the court held that the Board of Commissioners arbitrarily rejected the adjustments made by the City of Ironwood Board of Review. In granting relief, the Tribunal accepted the Board of Review's figure of $24,483,300 for the value of the real property in the City of Ironwood. The difference between that figure and the figure sent by the County Board of Commissioners was then allocated equally to all the governmental units in the county on grounds that the Tribunal could not change the total state equalized value of the county because of changes made in the valuation of individual units. See MCL 211.34(13); MSA 7.52(3).

Intervening defendant-townships bring two principal allegations of error on this appeal. We will address each one respectively.

Intervening defendants claim that the Tax Tribunal erred as a matter of law by ruling that the County Board of Commissioners, while determining county equalized value, had arbitrarily and improperly rejected the adjustments in assessment made by the City of Ironwood Board of Review.

On appeal, we are bound by the factual determinations of the State Tax Tribunal. MCL 205.735; MSA 7.650(53); Const 1963, art 6, § 28. See also *Ann Arbor v University Cellar,* 65 Mich App 512, 516; 237 NW2d 535 (1975), *rev'd on other grounds,* 401 Mich 279; 258 NW2d 1 (1977). In its opinion, the Tax Tribunal noted that the final report ultimately adopted by the Board of Commissioners made no effort to take into account adjustments by the Board of Review of the City of Ironwood, "but merely in one stroke rejected all but minimal reductions made by the Board of Review". What we must determine as a matter of law is whether such a rejection was permissible under existing authority.

Clearly, the Board of Review has the power to review assessments of individual parcels of property. *City of Negaunee v State Tax Commission,* 337 Mich 169, 176; 59 NW2d 136 (1953). This power is authorized by MCL 211.29; MSA 7.29.[1]

[1] "On the Tuesday next following the first Monday in March, the board of review of each township shall meet at the office of the supervisor, at which time the supervisor shall submit to said board the assessment roll for the current year, as prepared by him, and the board shall proceed to examine and review the same, and during that day, and the day following, if necessary, said board, of its own motion, or on sufficient cause being shown by any person, shall add to said roll the names of persons, the value of personal property, and the description and value of real property liable to assessment in said township, omitted from such assessment roll; they shall correct all errors in the names of persons, in the descriptions of property upon

Nothing in the statutes indicates that adjustments to assessments must be done in accordance with any set formula so long as they are not done arbitrarily. *National Bank of Detroit v Detroit*, 272 Mich 610, 615; 262 NW 422 (1935). The objective in any of these adjustments is to assess property at 50 percent of its true cash value. MCL 211.27; MSA 7.27.

Upon review of the record, we find the Tax Tribunal determined that the Board of Review made a great effort to secure adequate data for the adjustments but that the large number of appeals prevented completion of its work on time. Although some of the delay was due to the review board's attempt to reject the entire tax roll, the Tribunal also found that delay was occasioned in part by the county's two rejections of the proposed Equalization Committee report. Contrary to defendants' argument, we would also note that MCL 211.30; MSA 7.30 grants the Board of Review the power to change assessments on its own motion. Consequently, the Tribunal's determination that the review board changed three or four assessments on its own motion portends no procedural error on this appeal. Our opinion is that the review board properly exercised its statutory function.

MCL 211.34a; MSA 7.52(1) provides for county equalization of the assessments submitted by each of its governmental units.[2] The Tax Tribunal found

such roll, and in the assessment and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said roll comply with the provisions of this act." MCL 211.29; MSA 7.29.

[2] " * * * The county board of commissioners shall examine the assessment rolls of the several townships or cities and ascertain whether the real and personal property in the respective townships or cities has been equally and uniformly assessed at true cash value. If, on the examination, it shall deem the assessments to be relatively

that the Board of Commissioners arbitrarily rejected the Board of Review's reductions in the assessed value for the City of Ironwood. We find support for this conclusion in the fact that though not reaching an actual final decision until June 16, 1976, the Board of Commissioners began serious deliberations to equalize estimated assessment values based on the county tax department's higher figure some two weeks before the Board of Review even submitted its report. In light of this evidence, the Board of Commissioners has failed to perform its statutory duty to fully and fairly "examine the assessment rolls of the several townships and cities" when equalizing the assessments. MCL 211.34a; MSA 7.52(1).

Nor can the Board of Commissioners justify such conduct on the basis of improprieties by the Board of Review. We simply find no such improprieties. Though the attorney's submission of the Board of Review's report to the Board of Commissioners may have inconvenienced matters, we do not find this delay adequate cause for arbitrary rejection of the review board's action. Certainly, some of the delay was not totally due to the conduct of the Board of Review.

Consequently, we find that the Tax Tribunal properly followed the law in reaching its decision to grant relief in this matter. Clearly, the risk exists that local boards of review may abuse their power by permitting reductions in individual assessments based on factors which would not be considered by trained assessors. However, we find

unequal, it shall equalize the same by adding to or deducting from the valuation of the taxable property in a township or city an amount as in its judgment will produce a sum which represents the true cash value thereof, and the amount added to or deducted from the valuations in a township or city shall be entered upon the records." MCL 211.34(1); MSA 7.52(1).

equalization by the county applied to all real property in the local unit serves as an adequate deterent to such abuse. See *Ypsilanti Twp Supervisor v State Tax Commission,* 386 Mich 343, 355; 192 NW2d 227 (1971). When abuse or error of this kind occurs, use of the equalization process by the county board of commissioners will serve to adjust the figure submitted by the local unit. In this case, the Board of Commissioners simply rejected the Board of Review's figures, which the Tax Tribunal found, and we on appeal affirm, as arbitrary conduct requiring the relief granted. In short, we affirm the finding of error by the Tax Tribunal in the procedure employed by the Board of Commissioners. We need express no opinion regarding the accuracy of any figure submitted by either party.

Defendants contend that any supplement to the equalized values of the other eight units in the county violates constitutional provision prohibiting real property from being taxed at greater than 50 percent of true cash value. Const 1963, art 9, § 3. This argument ignores the fact that Michigan courts have adopted the primacy of equal treatment over strict adherence to the 50 percent cash value standard. *Allied Supermarkets, Inc v Detroit,* 391 Mich 460, 466–468; 216 NW2d 755 (1974). Faced with the need to equitably adjust the City of Ironwood's burden while maintaining the total state equalized valuation of the county, the Tribunal sought the middle course of increasing the assessment of each unit equally, thus minimizing the effect of the county's error on any one unit. See MCL 211.34(3); MSA 7.52(3).[3] We find no con-

---

[3] The most equitable solution would have been eliminating altogether the amount overassessed the City of Ironwood. We would thus avoid any need to confront the question of equalizing the improper inclusion of "one unit of amounts which should not have been assigned to any unit, in effect, non-existent value". However, as the Tribunal noted, the statute as presently constituted precludes any

stitutional error in this solution.

Having reviewed intervening defendants' allegations of error and finding neither persuasive, we sustain the holding of the State Tax Tribunal.

Affirmed.

---

change in the total state equalized value of a county where single units require changes in assessment figures by the Board of Commissioners or the Tribunal:

" * * * The deductions or additions shall decrease or increase the state equalized valuation of the local unit affected thereby but shall not increase or decrease the total state equalized valuation of the county in the case of an appeal under this section to the state tax tribunal." MCL 211.34(3); MSA 7.52(3).

Given the statutory inability to pass the overassessment figure onto higher state levels of the taxing structure, the Tribunal chose the only reasonable avenue of accomodation when confronted with error made on the county level of government by the County Board of Commissioners. They equalized the burden of overassessment on all county units. We are bound by the direction in the same statute.