CONGREGATION B'NAI JACOB v CITY OF OAK PARK

Docket No. 51156. Submitted November 14, 1980, at Detroit.—Decided January 6, 1981.

Congregation B'nai Jacob, an Orthodox Jewish ecclesiastical corporation doing business under the name "Kollel Institute for Advanced Religious Learning", sought tax exemptions for seven parcels of land in the City of Oak Park. On one parcel is located the Kollel, in which there are classrooms, lecture rooms and a library used for scholarly religious research, as well as a fully equipped synagogue. The City of Oak Park granted the exemption for the parcel upon which the Kollel was located. On the other six parcels are located houses occupied by fully ordained rabbis and their families. Each of the rabbis is equally responsible for the religious needs of the congregation as well as involved with the scholarly endeavors of the Kollel. The City of Oak Park refused to grant these exemptions on the basis that there can only be one parsonage subject to the statutory exemptions for parsonages. The congregation petitioned the Michigan Tax Tribunal, seeking to have the six parcels declared exempt on the basis of being parsonages. The Tax Tribunal determined that the rabbis were duly ordained members of the clergy, the houses owned by the congregation and used to house the rabbis were parsonages within the meaning of the General Property Tax Act, and there is no statutory limitation on the numbers of parsonages which may be exempt. Accordingly, the six parcels were held to be exempt from taxation. Respondent city appeals. *Held:*

1. Since there is no allegation of fraud with respect to the Tax Tribunal's determination, the Court of Appeals is bound by

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law § 657.

[2] 71 Am Jur 2d, State and Local Taxation § 381.

Tax exemption of parsonage or residence of minister, priest, rabbi, or other church personnel. 55 ALR3d 356.

[3] 71 Am Jur 2d, State and Local Taxation § 326 *et seq.*

73 Am Jur 2d, Statutes §§ 273, 313.

[4, 5] 73 Am Jur 2d, Statutes § 244.

the factual determinations of the Tribunal. The Court's review is limited to the question of whether the Tax Tribunal committed an error of law or adopted a wrong principle.

2. Since each of the rabbis is duly ordained and is equally responsible for the religious needs of the congregation, the houses owned by the congregation and occupied by the rabbis are parsonages within the meaning of that term as used in the General Property Tax Act.

3. While statutory exemptions from taxation are to be strictly construed, the language granting an exemption from taxation is as much entitled to obedience as is the language imposing taxation. Accordingly, since the word "any" is generally defined as meaning more than one, the use of the phrase "any parsonage" in the tax statute implies that each and every parsonage owned by a religious society and used as such shall be exempt from taxation. Any abuse which might result from the granting of multiple exemptions to a single congregation should be remedied by the Legislature and not by a strained construction by the judiciary of the present statutory language.

Affirmed.

1. TAXATION — APPEAL — TAX TRIBUNAL — STANDARD OF REVIEW.

The Court of Appeals, in the absence of an allegation of fraud, is bound by the factual determinations of the Michigan Tax Tribunal; the Court's review is limited to the question of whether the Tax Tribunal committed an error of law or adopted a wrong principle.

2. TAXATION — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — WORDS AND PHRASES — PARSONAGES — STATUTES.

A house owned by a Jewish congregation and occupied by a duly ordained rabbi responsible for the needs of that congregation is a parsonage within the meaning of that term as used in the statutory section exempting from taxation houses of worship and any parsonage owned by any religious society and occupied as such (MCL 211.7; MSA 7.7).

3. TAXATION — EXEMPTIONS — STATUTORY CONSTRUCTION.

Statutory exemptions from taxation are strictly construed; however, the language granting an exemption from taxation is as much entitled to obedience as that imposing the taxation.

4. WORDS AND PHRASES — "ANY".

The word "any" is generally defined as meaning more than one.

5. TAXATION — EXEMPTIONS — RELIGIOUS CORPORATIONS AND ASSOCIA-
TIONS — PARSONAGES — STATUTES.

  The use of the term "any parsonage", as used in the statute
  providing for the exemption from taxation of the property
  owned by religious societies, indicates an intent by the Legisla-
  ture that, if a religious society has more than one parsonage
  used for that purpose, each parsonage so owned and used is
  exempt from taxation (MCL 211.7; MSA 7.7).

*Bruce T. Leitman, P.C.,* for petitioner.

*Shifman & Goodman, P.C.* (by *Burton R. Shif-
man* and *Mark S. Baumkel),* for respondent.

Before: BASHARA, P.J., and J. H. GILLIS and CY-
NAR, JJ.

J. H. GILLIS, J. This is an appeal from a decision
of the Michigan Tax Tribunal. It involves the
petitioner's right to tax exemptions for numerous
parsonages occupied by rabbis and their families.
The respondent denied all but one of the claimed
exemptions. On appeal to the Tax Tribunal, how-
ever, all of the exemptions were granted. Respon-
dent appeals as of right.

Congregation B'nai Jacob is a Michigan corpora-
tion duly organized and existing under MCL
450.178 *et seq.;* MSA 21.179 *et seq.* It is "doing
business" under the name "Kollel Institute for
Advanced Religious Learning".

The members of Congregation B'nai Jacob are
Orthodox Jews. A principal aspect of their faith is
the belief that no form of motorized transportation
may be used on the Sabbath or any Jewish holi-
day. To accommodate this belief, the congregation
has purchased seven parcels of land adjacent to
the Kollel. Rabbis and their families live in the
homes on these parcels.

The Kollel itself is described as follows in the parties' agreed statement of facts:

"Within the Kollel are classrooms, lecture rooms and a library for scholarly inquiry into the Talmud—the organic Jewish law. However, the Kollel is also a fully equipped synagogue with a sanctuary, a copy of the Torah, and all accoutrements necessary to function as a viable Orthodox synagogue. In fact, the Kollel is used as a synagogue in order to celebrate the Jewish Sabbath as well as all holy days or festivals. All Jewish religious functions as well as weddings, Barmitzvahs, [and] circumcision of male children * * * are celebrated at the Kollel."

In 1977, petitioner requested tax exemptions for seven parcels of land, six on which rabbis live with their families, and the Kollel. The city granted the exemption for the Kollel, but denied the others. Tax exempt status for five residential parcels for 1978 is also at issue.

Pursuant to the fifth subsection of MCL 211.7; MSA 7.7,[1] "[a]ll houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and also any parsonage owned by any religious society of this state and occupied as such" is entitled to tax exempt status. The issue raised by this case is whether more than one parsonage per "religious society" may be exempted. Respondent denied the exemptions; the Tax Tribunal construed the statute as permitting such exemptions.

On appeal from a Tax Tribunal decision, this Court is "bound by the factual determinations of the Tribunal. *Ironwood v Gogebic County Board of Comm'rs,* 84 Mich App 464, 469; 269 NW2d 642 (1978). Where, as here, no fraud is alleged, our

---

[1] Now, MCL 211.7(e); MSA 7.7(e).

review is limited to the question of whether the Tribunal committed an error of law [or] adopted a wrong principle. *Consolidated Aluminum Corp, Inc v Richmond Twp,* 88 Mich App 229, 231; 276 NW2d 566 (1979), Const 1963, art 6, § 28".[2] *Michigan National Bank, Lansing v City of Lansing,* 96 Mich App 551, 553; 293 NW2d 626 (1980).

The Tribunal's decision granting the exemptions reasoned as follows: (1) the rabbis assigned to petitioner's congregation are members of the clergy who reside on the land in question; (2) the rabbis are duly ordained and thus the properties are parsonages; (3) the statute's language exempting "any" parsonage connotes an unlimited number of parsonages; (4) the lack of a limit coupled with the actual good faith use of the property in an appropriate manner requires that the property be exempted; (5) such a result will not lead to abuse of the law because financial considerations will naturally limit the number of "parsons" a congregation can afford; and (6) abuse, if any, should be remedied by the Legislature.

There being no dispute that the rabbis are duly ordained or that they are each equally[3] responsible for the religious needs of the congregation, we agree that the houses occupied by the rabbis are parsonages. See, *St Joseph's Church v Detroit,* 189 Mich 408, 413; 155 NW 588 (1915). The critical issue is whether the Tax Tribunal correctly determined that a given congregation may have multiple tax exempt parsonages. In line with the Tribunal's reasoning, we think that such multiple exemptions are within the scope of the statute.

Exemptions, as the antithesis of tax equality,

---

[2] The parties have stipulated that no fraud is alleged.

[3] The parties stipulated to this fact, and it is one upon which we place substantial reliance in resolving the issue.

are to be strictly construed. *Asher Student Foundation v East Lansing,* 88 Mich App 568, 571; 278 NW2d 675 (1979), *lv den* 406 Mich 999 (1979). However, as the Tax Tribunal recognized, "[t]he language of the Legislature in exempting from taxation is as much entitled to obedience as that imposing taxation". *Detroit Home & Day School v Detroit,* 76 Mich 521, 525; 43 NW 593 (1889).

The statute in question, MCL 211.7; MSA 7.7, states that "any" parsonage may be exempted from taxation. It does not state that *the* parsonage or *a* parsonage is tax exempt, despite the fact that "any" is generally defined as meaning more than one. See, *e.g.,* Webster's Third New International Dictionary (1965), p 97; Black's Law Dictionary (4th ed, 1951), p 120. See, also, *Harrington v Inter-State Business Men's Accident Ass'n,* 210 Mich 327, 330-331; 178 NW 19 (1920).[4]

As was stated in *Fuller Central Park Properties v City of Birmingham,* 97 Mich App 517, 524; 296 NW2d 88 (1980):

"The primary rule of statutory construction is that the Legislature is presumed to have intended the plain meaning of the words used by it. In interpreting statutes, all words and phrases should be construed according to the common and approved usage of the language. Correct and proper interpretation means giving effect to every word of the statute. Every effort must be made to avoid declaring any portion of the Legislature's language to be surplusage." (Footnotes omitted.)

[4] "[T]he word 'any' has a well defined meaning not only to the laity but also to the courts. This court has on at least two occasions considered it. In *Hopkins v Sanders,* 172 Mich 227, where the word 'any' was found in an act, this court, speaking through Justice STEERE and having reference to the act, said:

" 'In broad language it covers "any final decree" in "any suit at law or in chancery" in "any circuit court." "Any" means "every," "each one of all," ' * * *". 210 Mich 330.

If the word "any" is to be given its common and approved usage, it must be construed as meaning more than one. This gives effect to every word in the statute without reaching a nonsensical or strained result. If such a construction leads to abuse by taxpayers, the Legislature will have to remedy that situation when it arises. We can do no more than apply the statute as it is written.

Affirmed.