ST JOHN'S EVANGELICAL LUTHERAN CHURCH
v CITY OF BAY CITY

Docket No. 50997. Submitted May 6, 1981, at Grand Rapids.—Decided April 5, 1982.

St. John's Evangelical Lutheran Church purchased a parcel of residential property in Bay City and immediately started using the property as a dwelling residence for one of the teaching ministers employed by the church. The church requested that the property be removed from the tax roll but the city denied the request and the board of review denied the church's appeal. The Michigan Tax Tribunal upheld the decision of the city. The church appeals. *Held:*

The parsonage exemption in the state tax law applies to a residence of the pastor or his assistants who are ordained teaching ministers for a particular congregation, and there may be more than one parsonage per congregation or church. An exemption must be granted in this case on the ground that the teaching minister involved is ordained and does minister to the needs of the congregation.

Reversed.

1. TAXATION — CHURCHES — PARSONAGES.

A state tax exemption applies to all houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and also any parsonage owned by any religious society and occupied as such (MCL 211.7s; MSA 7.7[4p]).

2. WORDS AND PHRASES — "PARSONAGE".

A parsonage may be defined as a house in which a minister of the gospel resides, and it may be with or without land.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 71 Am Jur 2d, State and Local Taxation §§ 378, 381.

Tax exemption of parsonage or residence of minister, priest, rabbi, or other church personnel. 55 ALR3d 356.

Property used by personnel as living quarters or for recreation purposes as within contemplation of tax exemption extended to property of religious, educational, charitable, or hospital organizations. 15 ALR2d 1064.

3. TAXATION — CHURCHES — MINISTERS.

> A state tax exemption applies to any church-owned house occupied by a minister ordained in that church, and there may be more than one such "parsonage" per congregation or church (MCL 211.7s; MSA 7.7[4p]).

*Smith & Brooker, P.C.,* for petitioner.

*Henry J. Sefcovic,* for respondent.

Before: MacKenzie, P.J., and R. B. Burns and J. N. O'Brien,* JJ.

J. N. O'Brien, J. Petitioner, St. John's Evangelical Lutheran Church, appeals from an April 8, 1980, decision of the Michigan Tax Tribunal in favor of respondent, City of Bay City.

This case involves a parcel of property (Lot 14 and the south 40 feet of Lot 15, Block 8, Fitzhugh and Kiesel Subdivision, Bay City) purchased by petitioner on October 24, 1977. The subject property was used for residential purposes at the time of its purchase and was on the respondent's tax rolls. When purchased by petitioner, the subject property was immediately put to use as a dwelling residence for one of the teaching ministers employed by petitioner. This teaching minister's primary duty was teaching in the elementary school operated by petitioner on the same city block that contained the subject property.

Petitioner's request that the subject property be removed from the tax roll was denied by the city assessor on March 14, 1978. The board of review subsequently denied petitioner's appeal. Petitioner then appealed to the Tax Tribunal. The case was heard before an administrative law judge who rendered a proposed opinion and judgment on

* Circuit judge, sitting on the Court of Appeals by assignment.

March 10, 1980. The Tax Tribunal adopted the same on April 8, 1980.

St. John's Evangelical Lutheran Church of Bay City is a Michigan ecclesiastical corporation. It owns almost an entire block of property in the City of Bay City, that being Block 8 of Fitzhugh and Kiesel's Subdivision of Bay City, Michigan. To be precise, it owns the south 40 feet of Lot 2, all of Lots 3 through 14, and the south 40 feet of Lot 15 of the said Block 8. The church building is located on Lots 5 through 8. Lots 2 through 4 constitute a parking lot for the church. St. John's owns and operates a school as an integral part of the church parish. It is recognized as an approved nonpublic school by the Michigan Department of Education. This school is located on Lots 10 through 12. Lot 9 is used as a parking lot. A home occupied by the school principal is located on Lot 13. There is another house located on Lot 14 and the south 40 feet of Lot 15, which is occupied as a home by a teacher in the church-school. The church also owns a residence to the west of Block 8, located on Lot 13 of Block 9. It is occupied by the intern vicar of the church. The church also owns Lot 1 of Block 15 in the same subdivision, and the house thereon is occupied by Pastor Brenner, the head minister of the church.

The United States Bureau of Internal Revenue recognized the Wisconsin Evangelical Lutheran Synod, this church and this school for § 501(c)(3) tax exemption, as an educational, charitable and religious organization. St. John's Evangelical Lutheran Church is part of the Wisconsin Evangelical Synod. It has been in existence for 117 years in Bay City and it has been at this location for 107 years. The church building and the school building have a common heating and power system. The

church has owned Lot 13 and the home located on it for 89 to 90 years. The head pastor's home located on Lot 1, Block 15, is owned by the church and is not on the tax roll. Lot 13, Block 9, and the resident house located thereon has been owned by the church for 29 or 30 years. It is not, and has not been, on the tax roll. The church owns four residences, and only one of them has been placed on the tax roll, *i.e.*, Lot 14-15, Block 8, the subject premises.

St. John's conducts a Christian day school. The pastor is the superintendent of the school. The enrollment of the school is confined to the children of the members of the congregation. All subjects are taught on the basis of their Christian philosophy. Tuition is not charged. Teachers must receive theological training. They must be trained and certified by the synod as well as by the State of Michigan. Teachers in the school are considered as ministers of the gospel and have been granted exemption from selective service as such. The three teachers in this school are recognized by the Internal Revenue Service to be ministers of the gospel to the extent that their occupancy of a residence owned by the church is not attributed to them as income. This applies to all teachers in the school of the Wisconsin Synod. The church and the school operate under one common budget. The teachers are trained in knowledge of the Bible, church history, dogmatics and doctrine. They are trained to teach and catechize the children. The ministers are sometimes called preaching ministers and teaching ministers. The church views them equally as ministers of the gospel. Preaching ministers and teaching ministers are all trained in the synod schools. They have to be trained in the church school in order to be able to teach in the

church school. These teaching ministers are expected to make life-long commitment to their work just as the preaching ministers do. The teaching ministers receive a call from a congregation in the same fashion as a preaching minister does. In the church at large and at conventions teaching ministers and preaching ministers have the same rights and privileges. They serve as voting members at synodical meetings.

Teaching ministers assist in the church work, such as the distribution of sacraments, calling on the sick and, at times, preach the gospel. Teaching ministers are considered as self-employed, the same as preaching ministers, under the IRS rulings. Teaching ministers receive a divine call to the church and are installed in the church in a worship service. The teaching ministers are called to the church the same way as the preaching ministers. A teaching minister cannot solicit a call just as a preaching minister cannot. The teaching ministers and preaching ministers receive identical hospital benefits and retirement benefits. They are theologically equipped to perform marriages. Church law provides that a parish must provide housing for all teaching ministers, the only exception being where a teaching minister is a married female, in which case she lives with her husband.

The teaching minister who occupies the property in issue has been with the church for 14 years. Prior to the purchase of this house, the teaching minister lived at 206 S. Mountain, which the church owned for many, many years. The church furnishes all of the gas, water and other utilities in the houses. When the church purchased this house, it asked for the same tax exemption as it receives for the other houses it has owned for many years. When the church bought other simi-

lar properties which were on the tax rolls, the assessor always took them off the tax rolls upon its request.

The residence at issue is occupied by a Mr. Engle, his wife and family. He is a teaching minister, who heads the music department. This man also is the head organist, directs the choir, and is in charge of the total music department within the church and the school. The church has three parsonage exemptions and this would constitute a fourth. These residences are used rent free by the occupants.

These teaching ministers have a parallel in the Roman Catholic Church teaching orders. The Dominicans and the Jesuits, the so-called teaching orders, commit themselves to a clerical role in the teaching area. The Roman Catholic Church has many orders of nuns, as example Dominican nuns, which are primarily teaching orders.

Under the church canon and rules of theology of the Lutheran Church, the parish provides housing for its teaching ministers. This is mandated from the headquarters of the church and is not a matter of local discretion. Teaching ministers are installed or ordained.

Among the several questions presented for our review is whether the residence of a teaching minister is exempt from taxation under MCL 211.7(e); MSA 7.7 as a "parsonage"?

The clear unrefuted facts that came from pastor Brenner's testimony and exhibits are as follows:

1. Teaching ministers in Wisconsin Lutheran Churches are considered by that church to be ordained ministers of the gospel.

2. These teachers receive theological training.

3. They are trained and certified by the synod at the church schools.

4. These teaching ministers have been granted exemption from selective service as ministers.

5. The Internal Revenue Service recognizes them as ministers to the extent that their occupancy of a residence owned by the church is not attributable to them as income.

6. These teaching ministers make a life-long commitment to their work just as preaching ministers do.

7. They come to a church by receiving a call in the same fashion as the preaching ministers.

8. They have all the rights and duties of preaching ministers, including voting at synodical meetings.

9. They receive the same hospital and retirement benefits as preaching ministers.

10. They are theologically equipped to perform marriages.

It is the position of appellant that the overwhelming evidence presented at this hearing favors the construction that these teachers are ordained ministers within the definition in the case of *St Matthew Lutheran Church v Delhi Twp,* 76 Mich App 597, 599; 257 NW2d 183 (1977).

During the period of time relevant to all actions in this case, MCL 211.7(e); MSA 7.7, since amended to MCL 211.7s; MSA 7.7(4p), provided in pertinent part that:

"The following property is exempt from taxation under this act:

* * *

"(e) Houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and any parsonage owned by a religious society of this state and occupied as such * * *."

In the instant case, petitioner claims that the residence owned by the church and occupied by its teaching minister is a "parsonage" within the meaning of this statute.

In *St Joseph's Church v Detroit,* 189 Mich 408, 413; 155 NW 588 (1915), the Supreme Court said:

"A parsonage may be defined as a house in which a minister of the gospel resides. In its ecclesiastical sense the word 'glebe (or land) and house' belonging to a parish appropriated to the maintenance of the incumbent, or settled pastor of a church; but its modern general signification is in the sense of its being the residence of a parson, and it may be with land or without it." (Citations omitted.)

In *St Matthew Church, supra,* 599, we held:

"We conclude from the statutory language creating the exemption and the Supreme Court's definition of 'parsonage' that the exemption applies to any church owned house occupied by a minister ordained in that church."

Respondent does not, apparently, challenge petitioner's contention that its teaching ministers are ordained. Applying the above language cited with approval in *St Matthew Church* to the instant case requires a finding that the petitioner is entitled to the requested exemption.

Different dictionaries define a "parson" as "any clergyman" or as "the clergyman of a parish or congregation," and a "parsonage" as a clergyman's dwelling, especially a free official residence provided for a parson or pastor or minister by his congregation. It has a local connotation, associating the clergyman and a particular church or congregation.

As noted by the Tax Tribunal in the instant case:

" 'In *Webster's New World Dictionary,* Second College Edition, World Publishing Co., Inc., 1976, p 1035, parsonage is defined as:

" '1. The dwelling provided by a church for the use of its parson. 2. *Eng Eccles. Law* the land or income provided by a parish for its parson.

" 'See, also, *Webster's New Collegiate Dictionary,* G & C Merriam Co., 1973, p 835, defining parsonage as the house provided by a church for its pastor.

" 'Both parson and pastor connote a minister, or rector, having charge of a local church or parish or body of churches. 76 CJS, Religious Societies, § 39, p 795, 796. Further, 84 CJS, Taxation, § 289, p 587 explains that a parsonage, as used in tax exemption laws, has been defined as a house and land set apart for the minister's residence * * *.' " (Quoting from *Salvation Army v Grand Rapids,* MTT Docket No 26974-26976, decided September 10, 1979.)

This requirement that a "parsonage" be construed as a residence of an ordained minister (rabbi, priest, etc.) who is responsible for the religious needs of the congregation seems to have been implicitly adopted by this Court in *Congregation B'nai Jacob v Oak Park,* 102 Mich App 724; 302 NW2d 296 (1981), where this Court held that there could be more than one "parsonage" per congregation or church. In applying that conclusion to the facts of that case and in allowing the exemption sought by the congregation involved therein, the Court put great emphasis on the fact that the rabbis involved therein were each equally responsible for the religious needs of the congregation.

Based on the foregoing, the Court holds that the parsonage exemption applies to a residence of the

pastor or his assistants who are ordained teaching ministers for a particular congregation. Under this definition, the dwelling of the teaching minister involved in the instant case qualifies within the "parsonage" exemption formerly granted in MCL 211.7(e); MSA 7.7.

This Court agrees with the definition in *St Matthew Church, supra,* and an exemption must be granted in the instant case on the ground that the teaching minister involved is ordained and does minister to the needs of the congregation.

The decision of the Tax Tribunal is reversed. This decision renders comment regarding the other issues raised by the appellant unnecessary.

Reversed.