723 P.2d 887

Blaine SIMMONS, Aaron Robinson, and Bob Jephson, for themselves and as Representative Parties of the Idaho Association for Equitable Property Taxation, an unincorporated Idaho association, Plaintiffs-Appellants,

v.

IDAHO STATE TAX COMMISSION and Larry G. Looney, Carol M. Dick, Morgan Munger and Darwin L. Young, the Commissioners thereof, A. Wiley Snarr, Thomas A. Loertscher, and Clyde Burtenshaw, as County Commissioners of the County of Bonneville, and Gary Paxman, as County Assessor of the County of Bonneville, Defendants-Respondents.

No. 15936.

Supreme Court of Idaho.

July 23, 1986.

that finding here."

Alan E. Barber, Idaho Falls, for plaintiffs-appellants.

Jim Jones, Atty. Gen. and Charles A. Daw, Boise, for defendants-respondents Idaho State Tax Com'n and Commissioners Looney, Dick, Munger, Young.

Kimball Wesley Mason and P. Bruce Palmer, Idaho Falls, for defendants-respondents Bonneville County, Snarr, Loertscher, Burtenshaw and Paxman.

HUNTLEY, Justice.

Appellants-Simmons *et al.* (Simmons) own income-producing property in Bonneville County, Idaho, upon which they pay property taxes. Simmons filed suit in district court seeking declaratory judgment that I.C. § 63–105DD violates Idaho Const. art. VII, §§ 2 and 5, requiring uniform taxation; the equal protection provisions of Idaho Const. art. I, § 2 and U.S. Const. Amend. IV; as well as the Contract Clause of U.S. Const. art. I, § 10.

I.C. § 63–105DD, the so-called "50–50 homeowners' exemption," exempts a portion of residential improvements to real property from taxation. As initially enacted in 1980, (and made effective January 1, 1980) the statute exempted the lesser of $10,000, or 20% of the market value of a residence from property taxation. In 1982, the electorate, in Initiative No. 1, increased the exemption to the lesser of the first $50,000 or 50% of the value of a residential improvement as long as it was owner-occupied. The exemption applies to the residence itself, not to the underlying land. The current version of I.C. § 63–105DD (January 1, 1983–present) is set forth below.[1]

---

1. **63–105DD. Property exempt from taxation—Residential improvements.**—(1) During the tax year 1983 and each year thereafter, the first *fifty thousand dollars ($50,000)* of the market value for assessment purposes of residential improvements, or *fifty percent (50%)* of the market value for assessment purposes of residential improvements, *whichever is the lesser,* shall be exempt from ad valorem taxation.

(2) *The exemption allowed by this section may be granted only if:*

(a) *The residential improvements are owner-occupied and used as the primary dwelling place of the owner as of January 1;*

When effectuated, this provision significantly reduced the taxable value of property in Bonneville County. In 1982, the "10–20 homeowners' exemption" reduced the taxable value of all real property in the county to about 7% below the value that would have existed absent any homeowners' exemption. The reduction in taxable value became particularly dramatic in 1983, when the "50–50 homeowners' exemption" took effect. The new provision reduced the taxable value of Bonneville County property to about 20% below the value that would have existed absent any homeowners' exemption.

Apparently to help maintain revenues, the property tax levies rose from about 0.015 (1.5%) in 1982 ·(when levies varied between 0.013918 and 0.16149), to about 0.020 (2%) in 1983 (when levies varied between 0.018472 and 0.021703). The increased tax rates of 1983, combined with the increased exemption for homeowners, significantly increased the tax paid by non-exempt property owners (i.e., income producing property owners), while significantly reducing the taxes paid by exempt property owners (homeowners), at least on improvements assessed at up to about $150,-000. The chart below illustrates this effect. (For purposes of comparison, the chart uses the highest tax rates levied in the county during the given years; that is, 0.016149 (1.6%) in 1982, and 0.021703 (2.2%) in 1983.)

PROPERTY TAXES PAID ON EXEMPT AND NON-EXEMPT PROPERTIES OF COMPARABLE VALUE ($100,000)

| Assessed Value | Status | Tax Liability | |
|---|---|---|---|
| | | 1982 | 1983 |
| $100,000 | Non-Exempt | $1,615 | $2,170 |
| 100,000 | Exempt | 1,453 | 1,085 |

The chart makes two points. First, as previously mentioned, the tax liability for non-exempt property owners has risen significantly (34%) between 1982 and 1983, while having dropped significantly (25%) for exempt property owners. (The effect is less dramatic for values above and below $100,000.) Second, in 1983, the property owners in this example paid property taxes on non-exempt property equal to 2.2% of the assessed value of that property; the property owners of exempt property paid tax at an effective rate of less than 1.1% (1.085%) of the assessed value of the property.

Furthermore, due to the exemption's $50,000 ceiling, once the assessed value of a residence exceeded $100,000, the effective tax rate increased to more than 1.085%, as the chart shows. (Again, the chart assumes a tax levy of 0.21703 (2.2%).) Thus, the tax scheme has a disparate impact even among homeowners. The following table provides an illustration.

EFFECTIVE PROPERTY TAX RATES AND AMOUNTS PAID ON "EXEMPT" PROPERTIES IN 1983

| Assessed Value | Effective Tax Rate | Tax Liability |
|---|---|---|
| $ 50,000 | 1.085% | $ 543 |
| 100,000 | 1.085% | 1,085 |
| 150,000 | 1.447% | 2,170 |
| 250,000 | 1.736% | 4,341 |

Simmons asserts I.C. § 63–105DD attempts an end run around two state consti-

---

(b) The tax commission has certified to the board of county commissioners that all properties in the county which are subject to appraisal by the county assessor have, in fact, been appraised uniformly so as to secure a just valuation for all property within the county; and

(c) The owner has certified to the county assessor by April 15 that:

(i) He is making application for the exemption allowed by this section;

(ii) That the residential improvements are his primary dwelling place; and

(iii) That he has not made application in any other county for the exemption, and has not made application for the exemption on any other residential improvements in the county.

(3) The requirement for an owner to apply for the exemption is waived if that owner received the exemption during the previous year, and the county assessor is reasonably assured that the owner still occupies the same residential improvements. In all other situations, the owner must apply for the exemption as otherwise required by this section.

(4) The exemption allowed by this section must be taken before the reduction in taxes provided by sections 63–117 through 63–125, Idaho Code, is applied.

(5) The legislature declares that this exemption is necessary and just.

(Emphasis added.)

tutional provisions requiring that property be taxed at a uniform rate:

§ 2. **Revenue to be provided by taxation.**—The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that *every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided.* The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a per capita tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation.

Idaho Const. art. VII, § 2 (emphasis added).

§ 5. *Taxes to be uniform—Exemptions.*—All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: *provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just,* and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is hereby prohibited.

Idaho Const. art. VII, § 5 (emphasis added).

Simmons cites several cases in which this Court struck down tax schemes violating the above two constitutional provisions. In *Idaho Telephone Co. v. Baird,* 91 Idaho 425, 423 P.2d 337 (1967), this Court held requirement of Art. VII § 2 uniform taxation implicitly required uniform valuation. The Court struck down a tax scheme which taxed certain property owned by utility and car companies property at 40% of full cash value, while directing the assessment of all other property at 20% of full cash value. Simmons argues the utility and car companies paid more than their fair share, reducing the effective tax burden on other property owners. Simmons concludes the homeowners' exemption in the instant case violates the constitutional requirement of proportional taxation, in that it lowers the effective tax rate on owner occupied residences by reducing the effective rate of valuation by 50%.

In *Chastain's, Inc. v. State Tax Commission,* 72 Idaho 344, 241 P.2d 167 (1952), the State Tax Commission, sitting as a board of equalization, increased the assessed value of certain personal property from 23% to 29.9%, all other property remaining at 23%. The court struck down the scheme as unconstitutional under Idaho Const. art. VII, §§ 2 and 5, in that proportionate taxation cannot exist without uniformity of assessment.

In *County of Ada v. Red Steer Drive-Ins of Nevada, Inc.,* 101 Idaho 94, 609 P.2d 161 (1980), this Court held Ada County's assessment of residential property at 73% of market value, and its assessment of commercial property at 100% of market value, violated Idaho Const. art. VII, §§ 2 and 5.

Simmons argues the homeowners' exemption reduced the market value, for assessment purposes, of a particular class of property, owner-occupied residences, resulting in a lower effective tax rate on that property. This exemption, according to Simmons, has the same purpose and effect as a tax scheme which initially assesses owner-occupied residences at a lower rate than income producing property. Non-uniform assessment was held unconstitutional in *Baird, Chastain's,* and *Red Steer.*

While the effect of initial assessment of owner-occupied residential property at rates differing from income producing property may differ little in substance from an initial uniform assessment of both properties, followed by a partial exemption of the residential property, the state constitution contemplates such a distinction. Idaho Const. art. VII, § 2, requires that property tax be proportionate to the value of the

property, "except in this article hereinafter otherwise provided." Section 5 of the same article otherwise provides for the uniform levy of property taxes upon the same class of subjects within the same taxing district, "provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just...." This exemption applies to both Sections 2 and 5 of article VII of the Idaho Constitution. Property legislatively exempt from taxation need not comply with either of the uniform assessment and taxation requirements of Sections 2 and 5.

Simmons contends the framers of the Idaho Constitution intended the property be either wholly exempt or subject to equal rates of assessment and taxation, but not that it be partially exempt. For this proposition, Simmons relies heavily upon *Baird*. *Baird* held a statute requiring assessment of certain public utility and car company property at 40% of full cash value, and assessment of all other property at 20% of full cash value, violated Idaho Const. art. VII, §§ 2 and 5. *Baird*, 91 Idaho at 430–31, 423 P.2d at 342–43. The court said those sections require a uniform rate of assessment and taxation. *Baird*, 91 Idaho at 429, 423 P.2d at 341. In support of its conclusion, the *Baird* court looked to the debates of the 1889 Idaho Constitutional Convention:

> [I]t was unanimously assumed [by the convention delegates] that properties not wholly exempt would be subject to taxation on an equal basis with all other taxable property.... The tenor of the entire discussion over provisions of Art. VII, relating to finance and revenue, clearly indicates that the Framers of Idaho's Constitution intended only two alternatives: either that property would be subject to one uniform non-discriminatory rate of assessment and taxation or, that it would be entirely exempt from the burden of ad valorem taxation. *Baird*, 91 Idaho at 430, 423 P.2d at 342.

The Court apparently made this statement in response to an argument that the statute in question represented an attempt to partially exempt from taxation property other than utility and car company property. However, any analysis concluding that the establishment of a higher rate of assessment for a small fraction of the state's property is really a partial exemption of the vast majority of property is an analysis that turns the meaning of "exemption" on its head. Such a premise provides a very weak base from which to launch an interpretation of the property tax exemption language of Idaho Const. art. VII, §§ 2 and 5.

Indeed, the *Baird* court's interpretation of the convention debates is suspect. For its conclusion that the framers intended property be either uniformly assessed and taxed or entirely exempt, the *Baird* court cited portions of the convention debates regarding a version of art. VII, § 5, which would have wholly exempted mining company and certain household property and no other property. Proceedings and Debates of the Constitutional Convention of Idaho, 1889, pp. 1706, 1713 (1912). This version of Section 5 was not adopted. However, in discussing the version that was ultimately adopted (which provides "the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just...," Idaho Const. art. VII, § 5) some delegates made the following remarks:

> MR. BATTEN: I was going to say, I am not in favor of so much of the proviso, although not particularly opposed to it. I believe all after the word "personal" in line 4 could well be stricken out. Up to that part we deal with the subject as it should be dealt with in constitutions; simply as a matter of general principle. All after that is going into details, which I think properly falls to the legislature. I have just as a matter of curiosity glanced over what to me is a very excellent authority, Cooley on Constitutional Limitations, and he lays it down that the subject of taxation, dealing with it in the main and in detail, devolves upon the legislature, and should remain with the legislature, so that I think when Section 5 simply says this: "All taxes shall be

uniform,"—I would like to see the word "equal" there, "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal;" and let it stop there; *leave all those future matters of detail about mines and household effects to the legislature to deal with.* I think that would be the proper thing to do. I think we are getting a very cumbersome and verbose document here at best, and I think that is as far as we need go. However, I shall not offer any proposition; just strike that out. I am content with it to some extent, not altogether content, but partially content with it as it is, although I think it would be wise to strike out that proviso.

MR. BEATTY: If you strike that all out I would like to know under what provision you can exempt any property whatever. It says "all property shall be taxed." Now, what could you exempt?

MR. BATTEN: Yes, there would have to be some provision; *all property except what the legislature deems it expedient to exempt.* Now, I see a very fruitful source of trouble in this matter. I know the grangers will complain here—I of course stand in that neutral position of being neither granger nor miner. I have dabbled in mines to my sorrow, and am able to deal with it as impartially as I know how, and I am trying to deal with it in that spirit; but I see a fruitful source of trouble and contention. If we adopt it as it is the people will say: You have discriminated in favor of one class of people as against another. The grangers will be in arms against it and say: We will never support a measure of that sort. And I think for that reason, as a mere matter of policy (although we should not always act upon policy)—I believe policy and principle alike should urge us and induce us to strike out this matter of detail and take the fore part of the section, the part I

read, with some little amendment—"All taxes shall be uniform upon the same class of subjects within the tertorial [sic] limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; *provided, that such exemptions as the legislature sees fit to provide for,"* something like that.

MR. GRAY: I have an amendment.

SECRETARY reads: I move to strike out all of Section 5 from and after the word "personal" in line 4.

MR. GRAY: I do it on the grounds suggested by the gentleman who just had the floor.

MR. AINSLIE: Mr. President, do I understand the question is to strike out the whole of the section after the word "personal" in line 4? That is similar to the proposition of the gentleman from Alturas who just took his seat. If that is done, sir, there is *no restriction upon the legislature as to the amount of property they can exempt from taxation. If you adopt the first four lines of that substitute for Section 5, the legislature has the exclusive power then to say what property shall be exempt from taxation; and what property shall bear the burdens of taxation.* [Emphasis supplied.]

Proceedings and Debates of the Constitutional Convention of Idaho 1889, pp. 1720–22.

■■■ These remarks regarding the version of Idaho Const. art. VII, § 5, ultimately adopted reveal the framers' intent that the legislature have broad discretion in making property tax exemptions. *Baird* misinterprets the intent of Idaho Const. art. VII, § 5. That provision expressly authorizes "such exemptions from taxation as from time to time shall seem necessary and just...." This extremely broad and deferential language in no way suggests property may be wholly, but not partially, exempt. Therefore, the partial exemption under I.C. § 63–105DD of owner-occupied res-

identical improvements does not violate Idaho Const. art. VII, §§ 2 or 5.

 As to Simmons's equal protection arguments, the homeowners are not a suspect class and the exemption does further legitimate state interests, such as fostering home ownership and equalizing the tax burden between residential and business properties.

 We now turn to the argument that the exemption constitutes an impairment of contract. In *Sanderson v. Salmon River Canal Co., Ltd.*, 45 Idaho 244, 263 P. 32 (1927), Sanderson sued to enjoin the Canal Company from issuing bonds and securing their payment by mortgaging the company's irrigation system. Sanderson also alleged a statute which provided the company with a lien on lands superior to Sanderson's lien unconstitutionally impaired his contract already in existence with the company. The contract pledged to Sanderson shares of the company's stock as security for mortgages he held on company land.

The court held that the speculative reduction in the value of a contract caused by a possible reduction of the contract security does not rise to the level of a constitutional impairment of contract:

> The general rule would seem to be that a statute which does not act on the contract itself but merely on the property which is the subject of the contract may not be said to impair the obligation of the contract.... The value of the contract may be diminished, but the obligation of the parties to each other is not affected in the slightest degree.... The right to enforce appellant's contracts remains undisturbed, and their validity is not impaired. *Sanderson*, 45 Idaho at 258, 263 P. at 36.

Although the homeowners' exemption does shift the burden of retiring bonds to some extent from one class of taxpayers to another, all of the real property in the county remains subject to tax levy and remains as security for the payment of the bond obligation. The statute's effect on property tax revenues and on the government's ability to pay its bond obligations is too speculative to impair the obligation of contracts in violation of U.S. Const. art I, § 10. Affirmed.

Costs to respondent. No attorney fees awarded.

DONALDSON, C.J., and BISTLINE, J., concur.

SHEPARD and BAKES, JJ., concur in the result.