849 P.2d 98

**In the Matter: The Tax Appeal of Roman Catholic Diocese of Boise from a Decision of the Ada County Board of Equalization.**

**ADA COUNTY ASSESSOR,**
Petitioner–Appellant,

v.

**ROMAN CATHOLIC DIOCESE OF BOISE, Respondent.**

No. 19358.

Supreme Court of Idaho,
Boise, December 1992 Term.

Feb. 26, 1993.

Rehearing Denied April 22, 1993.

Greg H. Bower, Ada County Pros. Atty. and Eric T. Krening, Deputy Pros. Atty., argued, Boise, for petitioner-appellant.

Elam, Burke & Boyd, Boise, for respondent. Robert M. Tyler Jr. argued.

McDEVITT, Chief Justice.

## BACKGROUND

Roman Catholic Diocese ("RCD") is a non-profit corporation granted income tax exemption under I.R.C. § 501(c)(3). It includes about seventy parishes with resident priests. One priest will regularly serve two or more missions, or a hospital and a mission. The term "regularly" means weekly, biweekly, or at least monthly. Residences are provided to priests as part of their compensation and it is the bishop's duty to provide the housing. The bishop designates where the priests must live. The parishes do not own property and all the homes are owned by the RCD.

In 1989, upon the annual submission of a short form application by the RCD requesting tax exemption for two parcels of real property owned by RCD pursuant to I.C. § 63–105B,[1] the Ada County Assessor denied the request for the first time since their purchase 10 years ago. RCD owns the two parcels of land that are the subject of this appeal, one residential lot improved with a duplex and one improved with a single-family residence, valued at a total of over $100,000. Bishop Tod Brown has resided in one side of the duplex since April 1989, and Father Mark Schumacher has resided in the other side since 1987. The single-family residence was occupied by semi-retired Father John O'Sullivan until July 1989, at $200 per month rent. RCD requests that both residences be exempted from taxation under I.C. § 63–105B. Ada County's prime contention in denying exemption is that, in order for a residence to qualify for exemption as a parsonage, the inhabiting priest must be assigned to a particular church, parish, or mission and

---

1. Idaho Code § 63–105B sets forth property which is exempt from taxation. It provides: The following property is exempt from taxation: *Property belonging to any religious corporation or society of this state, used exclusively for and in connection with public worship, and any parsonage belonging to such corporation or society and occupied as such,* and any recreational hall belonging to and used in connection with the activities of such corporation or society; and this exemption shall extend to property owned by any religious corporation or society which is used for any combination of religious worship, educational purposes and recreational activities, not designed for profit.

that none of the residents of the disputed properties is so assigned.

Father Schumacher's duties are primarily administrative support services for the parish priests. The duties include handling property, liability and worker's compensation insurances, obtaining permission for marriages, and buying and selling property. His ministerial function is limited to substituting at mass for priests who are sick, on vacation, or between assignments, and some counseling. Father Schumacher's assignments are flexible, and he performs on an as-needed basis, as did Father O'Sullivan prior to full retirement. Indeed, because of the limited number of priests available in the area, there are several that live in Boise that are serving several different parishes, assigned weekly. Bishop Brown is responsible for the ministerial needs of all the state's Roman Catholics, and is required by canon law to visit each of the parishes once every one or two years. Bishop Brown is also the pastor of St. John's Cathedral in Boise, and has conducted services there several times since he arrived in April 1989. However, Father Riffle and Father Worster are primarily responsible for serving the ministerial needs of the parishioners of St. John's. Because of the Bishop's rigorous travel schedule, he conducts services less than 1% of the time at St. John's. The Bishop is the official administrator of the diocese, with Father Schumacher acting as his administrative assistant.

The Board of Tax Appeals ("BTA") determined RCD's properties qualified for a tax exemption as parsonages. Specifically, the BTA exempted one parcel for January 1989 through July 1989, and the other parcel for the entire year. Ada County appealed the BTA's decision to the district court on February 6, 1990, and filed a motion for summary judgment July 13, 1990. RCD filed its motion for summary judgment on January 4, 1991. At the hearing on the parties' cross-motions for summary judgment on March 5, 1991, the district court refused to dispose of the matter by summary judgment for lack of sufficient facts. Following the parties' stipulation to augment the record, the district court issued a memorandum decision and order, dated May 15, 1991, affirming the BTA. Ada County filed its notice of appeal to this Court on June 4, 1991. On appeal to this Court, the parties raise the following issues:

I. Whether the residences are "parsonages" such that they qualify for an *ad valorem* tax exemption under I.C. § 63–105B.

II. Whether the residences qualify for an *ad valorem* tax exemption under I.C. § 63–105B, on the basis that they are used for any combination of religious worship, educational purposes, and recreational activities.

III. Whether the residences qualify for an *ad valorem* tax exemption under I.C. § 63–105C, as property owned by a charitable organization and used exclusively for that organization's charitable purposes.

## STANDARD OF REVIEW

Rule 56(c) of the Idaho Rules of Civil Procedure states that summary judgment is to be "rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Summary judgment is properly issued when the party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Nelson v. Steer,* 118 Idaho 409, 410, 797 P.2d 117, 118 (1990); *Dekker v. Magic Valley Regional Medical Center,* 115 Idaho 332, 333, 766 P.2d 1213, 1214 (1988). On appeal, the reviewing court will not disturb the district court's factual findings if supported by substantial and competent evidence. *Evangelical Lutheran Good Sam. Soc. v. Board of Equalization of Latah County,* 119 Idaho 126, 127, 804 P.2d 299, 300 (1991). Moreover, this Court does not review facts that were stipulated in the lower court. *Linn v. North Idaho Dist. Medical Serv. Bureau, Inc.,* 102 Idaho 679, 688, 638 P.2d 876, 888 (1981). However,

this Court is not bound by the legal conclusions of the district court, and is free to draw its own conclusion from the facts presented. *Clark v. Saint Paul Property & Liab. Ins. Cos.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981).

Specifically, the questions of law in this case involve statutory interpretation. Under art. II, § 1, art. III, §§ 1 and 15, and art. V, §§ 2 and 13 of the Idaho Constitution, it is solely the province of the legislature to make laws and the duty of the court to construe them and, if a law as construed by the court is to be changed, that is a legislative not a judicial function. *Medd v. Arnell*, 117 Idaho 660, 667, 791 P.2d 410, 417 (1990); *In re Speer*, 53 Idaho 293, 23 P.2d 239 (1933).

This Court has consistently adhered to the primary canon of statutory construction that where the language of the statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction. *Otteson v. Board of Commrs. of Madison County*, 107 Idaho 1099, 1100, 695 P.2d 1238, 1239 (1985). Moreover, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute. *Bunt v. City of Garden City*, 118 Idaho 427, 430, 797 P.2d 135, 138 (1990). In construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990).

## I.

### I.C. § 63–105B "PARSONAGE" TAX EXEMPTION

#### A. *Statutory Construction*

The constitution authorizes the legislature to "allow such exemptions from taxation from time to time as shall seem necessary and just...." Idaho Const. art. VII, § 5. This rather general empowerment was born after extensive debate at the Constitutional Convention on the matter of property tax exemptions. Constitutional Convention art. VII, § 5, p. 1706. The Convention chose to quash language borrowed from Colorado's constitution specifically exempting all church properties, and several innovative substitutions therefor, in favor of the broad empowerment, indicating that the Convention clearly intended that the legislature should have the sole right to determine what property should be exempt from taxation, and not be constrained by definitive constitutional provisions. *Simmons v. Idaho State Tax Comm'n*, 111 Idaho 343, 723 P.2d 887 (1986); *Achenbach v. Kincaid*, 25 Idaho 768, 140 P. 529 (1914). Pursuant to the authority of art. VII, § 5, the legislature embarked on a dynamic, abiding course of prescribing limited *ad valorem* tax exemptions. It saw fit to carry over the language of the territorial statute exempting religious property into the law of the state until 1913,[2] at which time the legislature penned a revision. The statute has remained unchanged since then, codified as I.C. § 63–105B.

Idaho case law requires that all tax exemption statutes be strictly and narrowly construed against the taxpayer, who must show a clear entitlement, and in favor of the state. Courts may not presume exemptions, nor may they extend an exemption by judicial construction where not specifically authorized. *Bistline v. Bassett*, 47 Idaho 66, 71, 272 P. 696, 701 (1928). *See also Bogus Basin Recreational Assoc., Inc. v. Boise County Bd. of Equalization*, 118 Idaho 686, 799 P.2d 974 (1990); *Canyon County Assessor v. Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984). The language of exemption statutes must be given its ordinary meaning

---

2. The territorial statute reads:
   The following property is exempt from taxation ... churches, chapels and other buildings, with the lots of ground appurtenant thereto and used therewith, belonging to any church organization or society and used for religious worship, and from which no rent is derived; with their furniture and equipments; ...
   Idaho Rev.Stat. § 1401 (1887).

and an exemption will not be sustained unless within the spirit as well as the letter of the law. *Evangelical Lutheran Good Sam. Soc. v. Board of Equalization of Latah County*, 119 Idaho 126, 129, 804 P.2d 299, 302 (1991).

■ Tax exemptions exist as a matter of legislative grace, epitomizing the antithesis of traditional democratic notions of fairness, equality, and uniformity. *Canyon County Assessor v. Sunny Ridge Manor*, 106 Idaho 98, 102, 675 P.2d 813, 817 (1984). Therefore, they are to be construed according to the "strict but reasonable" rule of statutory construction. *Evangelical Lutheran*, 119 Idaho at 130, 804 P.2d at 303; *Bogus Basin Rec. Assoc. v. Boise County Bd. of Equalization*, 118 Idaho 686, 799 P.2d 974 (1990); *North Idaho Juris. of Episcopal Churches v. Kootenai County*, 94 Idaho 644, 647, 496 P.2d 105, 108 (1972). When an ambiguity arises in construing tax exemption statutes, the Court must choose the narrowest possible reasonable construction.

### B.  *Construction of I.C. § 63–105B*

As noted above, the constitution imbues this Court with the often formidable task of construing ambiguous statutory provisions. Because the legislature has chosen thus far to leave the courts with as little guidance in construing the I.C. § 63–105B "parsonage" exemption as the Convention left the legislature in creating such exemptions, and because the statute is clearly capable of more than one reasonable interpretation, it is incumbent upon this Court to construe I.C. § 63–105B. In construing this statutory provision, this Court is dealing with a case of first impression. In an attempt to discern and implement the intent of the legislature, we "seek edification from the statute's legislative history" and the contemporaneous context at enactment. *Leliefeld v. Johnson*, 104 Idaho 357, 367, 659 P.2d 111, 121 (1983). In addition, given that the legislative history of this provision is virtually nonexistent, it is both appropriate and necessary to "seek enlightenment in the decisions of sister courts which have resolved the same or similar issues." *Id.*

■ Constrained by the doctrine of strict constructionism, we must choose the most narrow, yet reasonable, definition of the disputed terms. We begin with an analysis of standard dictionary definitions of the terms within the provision, reflecting most closely the definition contemplated by the enacting legislature. *Black's Law Dictionary* defines a parsonage as "a certain portion of lands, tithes and offerings, established by law, for the maintenance of *the* minister who has the cure of souls. The word is more generally used for the house set apart for the residence of *the* minister." *Black's Law Dictionary* 1273 (4th ed. 1968) (emphasis added). It further defines "parson" as the rector of a parish, and defines "rector" as "one who rules or governs; the spiritual head and presiding officer of church; a clergyman elected by the members of the parish to have permanent charge of it. He is the official head of the parish. In English law, he that has full possession of a parochial church." *Id.* at 1147. *Ballentine's Law Dictionary* defines "parsonage" as:

> [A] dwelling house occupied by the pastor of a church, ordinarily owned by the church. When a church has acquired all the ecclesiastical rights it becomes, in the language of the law, a rectory or parsonage which consists of a glebe, tithes, and oblations established for the maintenance of the parson or rector to have cure of souls within the parish.

*Ballentine's Law Dictionary* 915 (3d ed. 1969). The term "parsonage" is also defined as "the residence of a parson or clergyman, as provided by the parish or church," *Random House Dictionary of the English Language* (1966); as "a certain portion of lands, tithes and offerings, for the maintenance of the parson of a parish; The glebe and house, or the house only, appropriated by a parish or ecclesiastical society to the maintenance or use of the incumbent or settled pastor or minister," *Webster's New International Dictionary* (2d ed. 1954); and as "the rector's house. Also, in later use, the house of a vicar, perpetual curate, or other incumbent of a parish or parochial district; sometimes ap-

plied to the residence provided for any minister of religion." *Oxford New English Dictionary* (1909). A neutral distillation of these definitions leads us to adopt the narrow yet reasonable definition of "parsonage" offered by the County, rather than the overly broad definition espoused by the RCD. It is evident that all the dictionaries refer to a residence occupied by the incumbent minister having ecclesiastical domain over a contained body of parishioners or church members, formally referred to as a congregation.[3] Although it is arguable that a more broad interpretation can be derived from the tomes, we are not at liberty to embrace an "arguably broad" interpretation under the doctrine of strict constructionism. It is not clear that the legislature intended to extend the word "parsonage" as was used in common parlance at the time this statute was enacted, to include any property housing any minister. Rather, the language "occupied as such" indicates the legislature's intent that the parsonage be occupied in a typical or traditional manner by a parson, pastor, or any religion's equivalent thereof.

We hold that a parsonage is not merely a residence owned by a religious organization in which an ordained member of that organization resides. The definition of "parsonage," as employed in I.C. § 63–105B, is a building owned by a religious organization occupied as a residence by a designated minister who ministers to a specific localized congregation that gathers to worship at frequent and regular intervals.

The adoption of this narrow yet reasonable definition of the term "parsonage" is in harmony with the decisions of our sister states that have had occasion to resolve the same issue. In Indiana, where a statute exempts property owned by churches and used as parsonages, the Indiana Tax Court denied a parsonage exemption to property owned by a church and occupied by ordained ministerial employees. *Indiana Assoc. of Seventh–Day Adventists v. Board*

*of Tax Comm.*, 512 N.E.2d 936 (Ind.Tax 1987). The court applied the doctrine of strict constructionism, holding that, in order to qualify as a parsonage, "the *minimum* which must be shown is that individuals residing in the parsonage perform the pastoral duties of an ordained minister." *Id.*, 512 N.E.2d at 939. Whereas the church did not even meet the minimum burden, the court did not bother to determine whether the scope of parsonage was further limited to a "house appropriated to a settled pastor of a church having a local congregation," simply citing with approval those courts holding as much. *Id.* A Kansas statute exempts all parsonages "owned by a church society and actually and regularly occupied and used exclusively as a residence by a minister or other clergyman of such church who is actually and regularly engaged in conducting the services and religious ministrations of such society." Kan.Stat.Ann. § 79–201 (1989). The Kansas Supreme Court interpreted this more succinctly drawn statute to exempt only the residence of a pastor for each congregation, refusing to extend the exemption to the residence of the bishop of the diocese. *Griswold v. Quinn*, 97 Kan. 611, 156 P. 761 (1916). The bishop argued that, because the Cathedral is known as the "Bishop's Cathedral," and because the bishop exercises his authority over the entire body of churches in his jurisdiction, he is within the definition of a pastor. The court held that the bishop was not the pastor of a specific church, stating that "the almost universal rule is that each church congregation has but one pastor ... if the legislature intended to exempt from taxation more than one parsonage for each congregation, it would doubtless have said so in express terms." *Griswold*, 156 P. at 762. The bishop "is a pastor with certain authority over all the churches in his jurisdiction, but the work of the local church is carried on by the local pastor, who is called the dean. As we construe the statute, the

---

**3.** "Congregation" is defined as:

[A]n assembly of persons met for the worship of God, and for religious instruction, a body of people who habitually so meet; a company or order of religious persons under a common

rule; a group of monasteries forming a subdivision of an order which agree to unite in closer ties of discipline and doctrine.

*Webster's New International Dictionary* (2d ed. 1954).

church at Salina is entitled to have the residence of its pastor exempt from taxation. The court has found that the dean is the pastor of that church, and that his residence is treated as exempt." *Id.*

The definition adopted by this Court today gleans the most support from similar constructions embraced by our sister states having almost identical statutes, namely, Michigan and New Jersey. The Michigan statute exempts any parsonage owned by a religious society and "occupied as a parsonage." Mich.Comp.L.Ann. § 211.75 (1986). In a series of cases, the Michigan appellate courts applied this provision to various properties and ultimately derived the requirement that, in order to qualify for exemption, the property must be occupied by a minister having a localized, identifiable congregation. *See Saint John's Evangelical Lutheran Church v. City of Bay City,* 114 Mich.App. 616, 319 N.W.2d 378 (1982); *Michigan Christian Campus Min., Inc. v. City of Mount Pleasant,* 110 Mich.App. 787, 314 N.W.2d 482 (1981); *Congregation B'nai Jacob v. City of Oak Park,* 102 Mich.App. 724, 302 N.W.2d 296 (1981); *Saint Matthew Lutheran Church v. Delhi Township,* 76 Mich.App. 597, 257 N.W.2d 183 (1977); *Saint Joseph's Church v. City of Detroit,* 189 Mich. 408, 155 N.W. 588 (1915). Likewise, the New Jersey statute exempts all buildings "actually occupied as a parsonage by the officiating clergyman of any religious corporation." N.J.Rev. Stat.Ann. § 54:4–3.5 (1986).

The New Jersey appellate courts, passing on various nonjurisdictional case law and dictionary definitions, held that "an 'officiating clergyman' [within the meaning of the statute] when textually associated with parsonage must be a settled or incumbent pastor or minister, that is, a pastor installed over a parish, church or congregation.... And when he is an 'officiating

clergyman of any religious corporation' he must be serving the needs of a reasonably localized and established congregation. In this sense a congregation signifies an assemblage or union of persons in society to worship their God publicly in such manner as they deem most acceptable to Him, at some stated place and at regular intervals." *Saint Matthew's Lutheran Church for the Deaf v. Division of Tax Appeals,* 18 N.J.Super. 552, 87 A.2d 732, 735 (1952) (citations omitted). *See also International Missions, Inc. v. Borough of Lincoln Park,* 87 N.J.Super. 170, 208 A.2d 431 (1965); *Township of Teaneck v. Lutheran Bible Instit.,* 20 N.J. 86, 118 A.2d 809 (1955).

Other states requiring a residence to house a pastor or minister with an identifiable local congregation in order to qualify for the statutory "parsonage" exemption include Maryland, Massachusetts, Tennessee, Wisconsin, and Washington. *See East Coast Conf. of Evan. Cov. Church of America v. Supervisor of Assessment,* 40 Md.App. 213, 388 A.2d 177 (1978); *Assessors of Boston v. Old South Soc.,* 314 Mass. 364, 50 N.E.2d 51 (1943); *Worcester Dist. Stewards New England Conf. of Methodists v. Assessors of Worcester,* 321 Mass. 482, 73 N.E.2d 898 (1947); *Blackwood Bros. Evangelical Assoc. v. Board of Equalization,* 614 S.W.2d 364 (Tenn.Ct. App.1980); *Missionaries of Our Lady of La Salette v. Michalski,* 15 Wis.2d 593, 113 N.W.2d 427 (1962); *Pacific Northwest Annual Conf. of United Meth. Church v. Walla Walla County,* 82 Wash.2d 138, 508 P.2d 1361 (1973).

On the other hand, if our legislature had intended for the religious property exemption to extend to residences occupied by church officials not specifically associated with a local congregation, it could have worded its statute much like Illinois.[4] In-

---

4. Illinois' statute provides an exemption for:
   [A]ll property used exclusively for religious purposes ... including all such property owned by churches or religious institutions ... and used in conjunction therewith as parsonages or other housing facilities provided for ministers (including bishops, superintendents, and similar church officials whose min-

isterial duties are not limited to a single congregation), their spouses and ... performing the duties of their vocation as ministers at such religious institutions....
Ill.Ann.Stat. ch. 120.500.2 (1991). The Illinois Court applied the exemption statute to an apartment building owned by a religious organization and used to house missionaries on furlough

stead, the legislature chose to employ a term of art, "parsonage," with contemporary established meanings attached thereto.

■ Applying the foregoing premises to the case at bar, it is clear that none of the residences in question qualifies for exemption as a "parsonage belonging to [any religious corporation or society] and occupied as such" within the parameters of I.C. § 63–105B. The statute is apparent in its requirements. The property owned by a religious organization must be used appropriately to qualify for exemption. It must be used as a parsonage.

During the year in question, 1989, RCD's single-family residence was occupied by Father O'Sullivan, a semi-retired priest without a designated congregation. Therefore, that residence does not qualify as a parsonage for tax exemption pursuant to I.C. § 63–105B. Similarly, the residents of the duplex property serve chiefly as administrators, lacking a regular ministry. Bishop Brown attends many events and ministers to various congregations throughout the state, obligations which prevent him from having a localized congregation and regular meetings thus preempting qualification of his residence for exempt status. *Griswold v. Quinn*, 156 P. at 762. Father Schumacher fills a chiefly administrative role, preaching where needed, when needed. Consequently his half of the duplex does not qualify either. *Worcester Dist. Stewards*, 73 N.E.2d at 900–01.

Let it be understood that we are in no way questioning the sectarian validity of the residents' ministerial designations. This definition of parsonage is simple, neutral, and uniform in its application. It requires no inquiry into the views of the religious organization or structure. It simply makes inquiries implicitly mandated by I.C. § 63–105B, requiring qualifying church-owned property to be inhabited by a minister in function as well as in name. This definition affects only secular aspects of the calling, it does not interfere with the individual's religious prowess. The localized congregation requirement is based on sound policy that, since the *ad valorem* tax burden of exempted property will be shifted onto the people of the county, those people should receive something in return—a place to worship in the community and a minister to conduct the services.

## II.
## "MIXED USE" *AD VALOREM* TAX EXEMPTION UNDER I.C. § 63–105B

■ "Churches and other religious institutions, fraternal, benevolent or charitable corporations or societies enjoy no inherent right to exemption from taxation; and their property is taxable except insofar as it is specifically exempt by constitutional provision or statutory enactment." *Malad Second Ward of the Church of Jesus Christ of Latter–Day Saints v. State Tax Comm'n*, 75 Idaho 162, 165, 269 P.2d 1077, 1080 (1954). The RCD claims a tax exemption for the properties under I.C. § 63–105B, as property used for a combination of "religious worship, educational purposes, and recreational activities." We hold that the residences do not qualify for this exemption.

Standard rules of statutory interpretation require this Court to give effect to the legislature's intent and purpose, and to every word and phrase employed. *Sweitzer v. Dean*, 118 Idaho 568, 571, 798 P.2d 27, 30 (1990). We will not construe a statute in a way which makes mere surplusage of provisions included therein. *Id.* at 571–72, 798 P.2d at 30–31. The mixed use provision of I.C. § 63–105B, exempting property used for any combination of religious worship, educational purposes, and recreational activities, has not previously been analyzed by this Court. Additionally, there is little or no case law from other jurisdictions on point. Accordingly, analysis of this question is almost exclusively reliant on an inde-

between foreign missions, granting the exemption. *Evangelical Alliance Mission v. Department of Revenue*, 164 Ill.App.3d 431, 115 Ill.Dec. 492, 517 N.E.2d 1178 (1987). Employing the strict constructionism standard, the court held that the broad language of the statute evidences the intent of the legislature to include residences of other church officials who did not necessarily serve a local congregation. 115 Ill. Dec. at 500, 517 N.E.2d at 1186.

pendent review and construction of the statute itself. When read in context and literally construed, it is evident that the mixed use provision implicitly excludes any use provided for under other portions of the statute not specifically enumerated in the mixed use provision. A plain reading of I.C. § 63–105B reveals that the legislature created four *separate* exemptions; (1) property used exclusively for religious worship or in connection therewith; (2) parsonages occupied as such; (3) recreational halls used in connection with the activities of the corporation; and (4) property used for any combination of religious worship, education, and recreational activities. The statute clearly isolates these exempt uses and never refers to property put to all four of those uses. We cannot imbue the statute with the construction that property used as a combination parsonage/residence and place used exclusively in connection with religious worship or place used for recreation/education qualifies for exemption, especially considering that the mixed use exemption expressly omitted "parsonage." Moreover, the *North Idaho* doctrine of *pari materia* is not applicable here because it refers to dual qualification under independent statutes, not under independent clauses of the same statute.[5]

The properties in issue do not qualify because they are used for a combination *residence* and place of religious worship or education or recreation. No other reasonable interpretation of the statute would give effect to all provisions therein, read in internal harmony.

### III.

### THE "CHARITABLE USE" *AD VALOREM* TAX EXEMPTION UNDER I.C. § 63–105C

The I.C. § 63–105C argument has, heretofore not been raised. It was not addressed by the district court and cannot be raised for the first time on appeal.

Costs to appellant on appeal.

BISTLINE and TROUT, JJ., concur; REINHARDT, J., pro tem., concurs.

JOHNSON, Justice, dissenting.

I respectfully dissent from the Court's opinion.

The Court wrestles mightly with the meaning of "parsonage." In doing so, the Court invokes various dictionaries as well as statutes and decisions from other jurisdictions. I would merely apply a construction that acknowledges that both "parson" and "parsonage" are archaic terms from an earlier era. Both the legislature and this Court have more recently used the term "clergyman" to refer to the leader of a church or religious organization. *E.g.*, I.C. § 30–324 ("If the management of a church is vested in its members pursuant to section 30–314, Idaho Code, the organization meeting shall be held by the members upon the call of the clergyman or lay leader calling the meeting ..."); I.R.E. 505 (A "clergyman" is a "minister, priest, rabbi, accredited Christian Science Practitioner, or other similar functionary of a religious organization ...").

In these terms, "parsonage" is nothing more than a clergyman's (or stated in gender-neutral terms clergy's) house. The mighty struggle in which the Court engages would be easily resolved if this straightforward construction were given to the meaning of "parsonage" in I.C. § 63–105B. If so, the Court should have no problem in allowing the exemption for the residences in this case.

---

5. In *North Idaho Juris. of Episcopal Churches v. Kootenai Co.,* 94 Idaho 644, 496 P.2d 105 (1972), this Court refused to limit the qualification of property belonging to a religious corporation because it happened to be used both for educational purposes under I.C. § 63–105B and for charitable purposes under I.C. § 63–105C. *North Idaho,* 94 Idaho at 645, 496 P.2d at 106. The Court held that the doctrine of tax exemption set forth in I.C. § 63–105B and C are not mutually exclusive, but should be read in pari materia. *Id.* at 650, 496 P.2d at 111. "The real property utilized by religious organizations ... should be exempt from ad valorem taxes, since all activities conducted thereon, although in some aspects charitable, and in some aspects educational, are nevertheless directly related to the religious purposes for which the groups are organized." *Id.*