# EAST COAST CONFERENCE OF THE EVAN-
# GELICAL COVENANT CHURCH OF
# AMERICA, INC. ET AL. *v.* SUPER-
# VISOR OF ASSESSMENTS
# OF PRINCE GEORGE'S
# COUNTY

[No. 1348, September Term, 1977.]

*Decided July 18, 1978.*

The cause was argued before MOYLAN, MELVIN and COUCH, JJ.

*Gerald E. Baker* and *Paul R. Shelby* for appellants.

*Robert J. Aumiller, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

The East Coast Conference of the Evangelical Covenant Church of America, Inc., et al., appellants, take this appeal from an order of the Circuit Court for Prince George's County, reversing the order of the Maryland Tax Court, which had granted a tax exemption under Art. 81, § 9 (c), to certain real property owned by the Conference. The single question presented in this appeal is one of statutory construction — whether the "parsonage" tax exemption found in Art. 81, § 9 (c), includes any property owned by a church and used exclusively as a residence by a pastor, whether or not there is an existing congregation or church building.

The facts involved in this case are largely undisputed. The Evangelical Covenant Church of America was duly organized in 1885, now having a membership over 70,000 in more than 550 churches. The East Coast Conference is one of its ten regional conferences. After determining to make a major effort to establish new churches in areas where the church was not well known, the Conference selected the Washington, D. C. Metropolitan Area as a project area. To implement its plan, appellant issued a "call" to Reverend Njaa to become the area nucleus builder. Reverend Njaa was a duly ordained minister of the church and had previously served as pastor of three covenant churches. The main function of Reverend Njaa was to organize local members of the church into groups which would ultimately be large enough and interested enough to support their own parish. When and if Reverend Njaa's organizing efforts were successful, these groups would call their own minister. On occasion, Reverend Njaa performed typical pastoral duties with a particular group in the Gaithersburg-Rockville area and he maintained that the entire Washington Metropolitan Area was his parish. While admitting that his job was to start new churches, he stated he also served as pastor.

A few months after Reverend Njaa's arrival in the Washington area, the East Coast Conference purchased a house in Bowie, Maryland to be used exclusively as a residence by the Reverend and his family; the house was admittedly used for no other purpose.

In due course, appellants filed an application with the Supervisor of Assessments of Prince George's County requesting an exemption from real property assessment and taxation on their property being used as a residence, on the ground that said house constituted a "parsonage" within the meaning of Art. 81, § 9 (c), of the Annotated Code of Maryland (1957 Repl. Vol.). The exemption was denied by the Supervisor of Assessments and an appeal was taken to the Property Tax Assessment Appeal Board for Prince George's County, which affirmed the Supervisor's denial. A further appeal was then taken to the Maryland Tax Court and, for the first time, appellants were successful. The Tax Court reversed the Supervisor of Assessments and granted the § 9 (c) exemption. The Supervisor of Assessments appealed the Tax Court decision to the Circuit Court for Prince George's County, and that court reversed the decision of the Maryland Tax Court, in effect denying the exemption to appellants. Undaunted, appellants ask this Court, on appeal, to reverse the Circuit Court and to reinstate the Maryland Tax Court decision. We decline to do so.

Article 81, Sec. 9, provides for real and personal property exemptions generally. Section 9 (c) provides:

> "Property owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents . . . shall be exempt."

There is no dispute that the subject property is owned by a religious group or organization. The question is whether the subject property is a parsonage as used in that section.

Distilling the many definitions found in standard dictionaries,[1] it seems fair to say a parsonage is, in general,

---

1. Parsonage:
Black's Law Dictionary, Rev. Fourth Edition: "A certain portion of lands,

a house supplied to a parish minister by the parish congregation or church.

Whether or not there must be an existing local church or congregation, to which the parsonage is an adjunct, is the disputed point.

Art. 81, § 9 (a) requires that all exemptions be strictly construed. The Court of Appeals in *Perdue v. State Dept. of Assessments & Taxation,* 264 Md. 228, 232-3, 286 A. 2d 165, 167 (1972), stated:

> "To determine the applicability of a legislative exemption to particular facts it is necessary to ascertain whether the language of the act clearly and unambiguously included the claimed items by words used in their ordinary and popularly understood meaning . . . . It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt must be resolved in favor of the State."

---

tithes and offerings, established by law, for the maintenance of the minister who has the cure of souls. Tomlins.

The word is more generally used for the house set apart for the residence of the minister. Mozley & Whitely."

Webster's Third New International Dictionary, unabridged (1976): "1: the benefice under English ecclesiastical law of the parson of a parish: a, a parish church and the income attached to it (as from rights, glebes, and tithes) b, a certain portion of lands, tithes, and offerings for the maintenance of the parson 2a: the house or the house and land provided by a parish or congregation for its pastor's use, b: a clergyman's residence."

Ballentine's Law Dictionary 3rd Ed. (1969): "A dwelling house occupied by the pastor of a church, ordinarily owned by the church." 45 Am. Jur. (1st) Relig. Soc. § 30.

When a church has acquired all the ecclesiastical rights it becomes, in the language of the law, a rectory or parsonage which consists of a glebe, tithes, and oblations established for the maintenance of the parson or rector to have cure of souls within the parish. Pawlet v. Clark (US) 9 Cranch 292, 326, 3 L. Ed. 735, 747.

The Cyclopedic Law Dictionary (3rd Ed.) 1940: "A parsonage is a house in which a minister of the gospel resides." 189 Mich. 408.

Random House Dictionary of the English Language (1966): "1. the residence of a parson or clergyman, as provided by the parish or church, 2. Eng. Eccles. Law, the benefice of a parson."

Oxford New English Dictionary (1909): "The benefice or living of a parson; a rectory. 2. The house attached to a parson's living, the rector's house. Also, in later use, the house of a vicar, perpetual curate, or other incumbent of a parish or parochial district; sometimes (esp. in U.S. and Colonies) applied to the residence provided for any minister of religion."

Appellants argue that the legislature eliminated any doubt as to the construction of "parsonage" by repealing and reenacting Art. 81, § 9 (c), with amendments in Acts 1972, ch. 350, § 1.

Formerly Article 81, Sec. 9 (4) provided:

"Houses and buildings used exclusively for public worship, and the furniture contained therein, and any parsonage used in connection therewith, and the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof."

Article 81, Sec. 9 (c) was passed in 1972; it repealed Article 81, Sec. 9 (4) and reenacted the former law, providing in pertinent part:

"(c) Churches. — Property owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents, and property owned by any such group or organization and actually used exclusively for educational purposes."

The amendments in part eliminated the requirement of a "connection" with houses and buildings used exclusively for public worship, arguably indicating that no identifiable church is required. On the other hand, it may be argued that all the amendments did, so far as is here pertinent, was to remove the requirement of a physical connection with a church building (in terms of spatial proximity). The legislature may well have been recognizing that congregations in modern times often find their pastors' homes in the neighborhood of the church, rather than in a connected church building. The amendments did not necessarily alter the definition of parsonage to eliminate the requirement that there be an "organizational" [2] connection with an existing church or congregation.

2. We use the word "organizational" in terms of the functional and spiritual relationship between the pastor (therefore, the parsonage) and his church and congregation.

The Maryland Tax Court, in its opinion reversing the Property Tax Assessment Appeal Board for Prince George's County, concluded that the legislature, by the 1972 amendments, removed the requirement that the house must be used in connection with another house or building which is used exclusively for public worship. It finally concluded:

> "Parsonages and convents are residences that are not intended to have any other religious use."

In its Memorandum and Order of Court, the Circuit Court concluded:

> "The Court feels that in order for a parsonage to qualify for an exemption from real estate taxation it must be an adjunct to a house of public worship or a residence of a clergyman who is affiliated with a house of public worship."

Under Art. 81, Sec. 229 (o), the Circuit Court was required to determine the matter upon the record made in the Maryland Tax Court and must affirm the Tax Court Order unless it was erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. The requirement of *substantial evidence* has been interpreted to mean "whether a reasoning mind reasonably could have reached the factual conclusion which the agency reached." *See Comptroller of the Treasury, Income Tax Division v. Diebold, Inc.,* 279 Md. 401, 369 A. 2d 77 (1977).

We conclude the Tax Court erred in holding appellant's property was exempt, as a matter of law. We do so because we find that to qualify as a parsonage there must be a minister with an identifiable parish and congregation and, of course, a building furnished to him by the church or congregation for his residence. The record clearly demonstrates that Reverend Njaa, although an ordained minister, accepted a "call" as a nucleus builder for the Washington, D.C. area, not as a traditional minister for an identifiable congregation. There was also evidence of

appellants' "methodology" of church development which explained Reverend Njaa's duties, in part, as follows:

"...A Nucleus Builder is a Pastor whose primary goal shall be to coalesce groups of Christians simultaneously in several Service Areas who may become the nucleus for the beginnings of a Covenant Church.

*Such a person does not hold regular services or serve a parish as such.* Once the nucleus has developed to a point of taking a step forward to organize into a fellowship group, a Developer Pastor would be called .... The nucleus builder would normally have two or three groups simultaneously." (Emphasis supplied.)

Despite the Reverend's opinion that the entire Washington area was his parish, it is patent that his superiors did not so conclude. We also find it significant that it was contemplated by appellants "once the nucleus has developed to a point of taking a step forward to organize into a fellowship group, a Developer Pastor would be called."

Support for our conclusion may be found in strikingly similar cases such as *Pacific Northwest Annual Conf. v. Walla Walla County,* 82 Wash. 2d 138, 508 P. 2d 1361 (1973), *Worcester Dist. Stewards v. Assessors of Worcester,* 321 Mass. 482, 73 N.E.2d 898 (1947), *Int. Missions, Inc. v. Lincoln Park,* 87 N.J. Super. 170, 208 A. 2d 431 (1965), and *Harmon v. No. Pacific Union Conf.,* 462 P. 2d 432 (Alaska 1969).

*Order affirmed.*
*Costs to be paid by appellants.*