**INDIANA ASSOCIATION OF SEVENTH–DAY ADVENTISTS, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.**

No. 29T05–8612–TA–00053.

Tax Court of Indiana.

Aug. 17, 1987.

Alex L. Rogers, Steers Sullivan McNamar & Rogers, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

## STATEMENT OF THE CASE

This is an appeal from a final determination of the State Board of Tax Commissioners (Respondent) denying an exemption from real property taxes requested by the Petitioner for 1983. The exemption originally requested was for more property than is at issue here. Respondent granted the exemption to all of the property requested except as to one-half of a duplex residence. It is this denial that is at issue here. As to the half for which the exemption was denied, the assessed value was $6,885; an equal amount for the other half was allowed as exempt by the Respondent under IC 6–1.1–10–21. Petitioner has not challenged the amount of the assessed value, only the question of the exemption claim has been brought for court review.

## STATEMENT OF FACTS

1. Petitioner is an Indiana not for profit corporation with approximately 71 churches.

2. This corporation owns churches, schools, parsonages, and other real property in Indiana, including that which is the subject of this action.

3. On May 10, 1983, Petitioner filed an application for a property tax exemption. It based its claim for the exemption on IC 6–1.1–10–16. The application claimed exemption for 15.7 acres together with the improvements located thereon. These improvements consisted of a church office building, which housed Petitioner's state headquarters, two storage garages, and a duplex. There is no evidence as to the action taken by the County Board of Review or the reasons for its action, but it is presumed that the application was denied on August 18, 1983. A petition to Respondent for review of the exemption was then filed by Petitioner. Thereafter on September 26, 1983, the Respondent held a hearing on the petition. The hearing was not recorded, and the Petitioner kept no notes of the hearing. The hearing officer discarded his notes after he filed his report, so the only written evidence of the hearing is the report filed by the hearing officer. Both the Petitioner's treasurer, Mr. Massengill, and the hearing officer testified from memory as to what evidence was presented at the hearing.

The Respondent allowed the claimed exemption for the church office and storage buildings pursuant to IC 6–1.1–10–16 and one-half of the duplex pursuant to IC 6–1.-1–10–21. It denied one-half of the duplex because it did not conform to the requirements of IC 6–1.1–10–21. The Petitioner appeals the denial. As this appeal only concerns the nonexempted portion of the duplex except as used in ¶ 5 *infra,* reference hereafter to the term duplex is intended only to refer to that portion of the duplex for which the exemption was denied.

4. The duplex is used primarily to house ministerial employees of Petitioner's Indiana conference, particularly in the local area or for office ministerial departmental staff. Mr. Massengill testified that they are pastoral or licensed ministers, who would be assigned within a 20 or 25 mile radius, where there are 6 or 7 churches.

5. Most of the time both sides of the parsonage duplex were occupied by ordained ministers of the Church. To become an ordained minister, the minister must work at least three (3) years in a type of internship program within the Church's organization. These interns are sometimes housed in the duplex.

6. An "ordained" minister as defined by the doctrines and principles of the Indiana Association of Seventh-Day Adventists Church means a person who is able to perform religious functions, such as baptisms, marriages, and other sacraments of the Seventh-Day Adventists Church.

7. The Seventh-Day Adventists allow a non-ordained minister to reside in the duplex only if an emergency exists.

8. The duplex has been used to house teaching ministers only on a short term basis until the teaching minister can find housing for himself and his family. Such teaching ministers have to be trained in the doctrines and beliefs of the Seventh-Day Adventists to be able to teach in their church schools.

9. Sometimes the duplex is vacant and there is no specific contract or lease agreement for occupancy. No rents are accepted for its use.

10. Petitioner's witness did not recall who was living in the duplex on March 1, 1983, or at other times that year. He did not remember whether he testified at the hearing that the person living there was a teacher.

11. Petitioner's witness also could not recall who lived in the duplex on the assessment date without looking at his records. He had not looked at those records prior to trial and did not bring the records to the trial.

12. The duplex is not a permanent house "like … normal parsonages" but is "more of a transit housing arrangement."

13. Sometimes the persons who live in this duplex work at the church headquarters office, but no one can live there who is not an employee of the church.

14. Petitioner's president, secretary, treasurer, assistant treasurer, or the heads of the trust, communications, and personal ministries departments, along with educational personnel and publishing person-

nel, may have occupied the duplex at some time.

15. Each of the above-listed persons is and was considered to be a minister under Seventh Day Adventists Church doctrine.

16. The hearing officer recommended disapproval of the exemption for the parsonage duplex under IC 6–1.1–10–21 because a teaching minister was residing in the parsonage duplex at the time of the hearing, and thus did not qualify as a minister under the statute.

17. The hearing officer had no prior knowledge of the customs, doctrines, and beliefs of the Seventh-Day Adventist Church prior to the hearing.

Other facts will be stated below as necessary.

### DISCUSSION AND DECISION

The pertinent constitutional and statutory provisions governing this cause are as follows:

IND. CONST. art. X, § 1 provides in part.

(a) The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal. The General Assembly may exempt from property taxation any property in any of the following classes:

(1) Property being used for municipal, educational, literary, scientific, religious or charitable purposes....

IC 6–1.1–10–16 provides in part:

(a) All or part of a building is exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes.

IC 6–1.1–10–21 provides in part:

(a) The following tangible property is exempt from property taxation if it is owned by, or held in trust for the use of, a church or religious society:

....

(2) buildings that are used as parsonages....

(b) To obtain an exemption for parsonages a church or religious society must provide the county auditor with an affidavit at the time the church or religious society applies for the exemptions. The affidavit must state that:

(1) all parsonages are used to house one (1) of the church's or religious society's rabbis, priests, preachers, ministers, or pastors; and

(2) none of the parsonages are being used to make a profit.

The affidavit shall be signed under oath by the church's or religious society's head rabbi, priest, preacher, minister, or pastor.

It is well established that statutes exempting property from taxation are to be strictly construed in favor of the tax, and the burden is upon the one claiming the exemption to show that the property clearly falls within the exemption statute. *Storen v. Jasper County Farm Bureau Co-Operative Association* (1936), 103 Ind.App. 77, 2 N.E.2d 432. The burden is therefore on the Petitioner to prove that the duplex falls within the provisions of either IC 6–1.1–10–16 or IC 6–1.1–10–21.

As stated above, Petitioner filed the exemption pursuant to IC 6–1.1–10–16. At the hearing, the focus of inquiry on the duplex was narrowed to the provisions of IC 6–1.1–10–21. The hearing officer testified as follows:

A. No, at the hearing we discussed under what section their duplex would apply, and at that point we determined that it as as a parsonage under 6–1–21–10–1. (sic)

Q. There was some discussion then?

A. Yes.

Q. And did Mr. Massengill indicate to you then it should become under—instead of Section 16, it should come under Section 21 then?

A. The property itself falls within the purview of both sections, Section 16 being the educational, charitable, literary, scientific section.

Q. Right. Section 21 being that which provides an exemption for a parsonage.

Q. So you were looking at that duplex then as a parsonage and not as a building used for religious purposes then?

A. No, I was looking at the entire property under the realm of Subchapter 10.

Q. The entire section then, right?

A. I am not going to deny an exemption for anybody if they fail to check one of those boxes.

Transcript at 93.

■ The first issue is whether the Petitioner presented sufficient evidence to the hearing officer to require the duplex to be exempt within the provisions of IC 6–1.1–10–21.[1]

Under IC 6–1.1–10–21(b), a parsonage must be "used to house one (1) of the church's or religious society's ... ministers...."

Neither the Indiana Supreme Court nor the Indiana Court of Appeals have heretofore defined the term "minister" as it applies to exemption statutes for parsonages. However, other jurisdictions with statutes similar to IC 6–1.1–10–21 have held that a parsonage exemption applies to any church owned house occupied by one who is either an ordained minister of that church or one who performs the duties of an ordained minister. *See Saint Matthew Lutheran Church v. Delhi Township, Ingham County* (1977), 76 Mich.App. 597, 257 N.W.2d 183; *In Re Marlow* (1977), 269 S.C. 219, 237 S.E.2d 57; *Blackwood Brothers Evangelistic Association v. State Board of Equalization* (1980), Tenn.App., 614 S.W.2d 364. Through reference to various dictionary definitions of the words parsonage and minister, these courts determined that a resident must at least perform the acts of an ordained minister in order to receive the parsonage exemption. Additionally, the courts noted that the traditional application of such exemptions has been to relieve from the burden of taxation a benefice of land or housing appropriated to a settled

pastor of a church having a local congregation. *Harmon v. North Pacific Conference of Seventh-Day Adventists* (1969), Al., 462 P.2d 432; *East Coast Conference of Evangelical Covenant Church of America, Inc. v. Supervisor of Assessments of Prince George's County* (1978), 40 Md.App. 213, 388 A.2d 177. A reason given for not requiring formal ordination is that "some churches do not have formal ordination, and ... many small, rural churches cannot afford full-time, ordained ministers." *In Re Marlow*, 237 S.E.2d at 60. The exception of not requiring ordination in these situations is in keeping with the traditional practice of exempting church owned property which is occupied by one who attends to the pastoral needs of a congregation.

The court finds the above authority persuasive and therefore finds that to qualify as a minister and thus come within the provision IC 6–1.1–10–21, the minimum which must be shown is that individuals residing in the parsonage perform the pastoral duties of an ordained minister. The Petitioner did not present sufficient evidence as to the persons residing in the duplex to carry its burden of proof. Thus the Respondent denied the exemption based on substantial evidence and its decision was not arbitrary, capricious, or contrary to law. *Department of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248. Accordingly, the determination of the Respondent under IC 6–1.1–10–21 in denying the exemption is affirmed.

■ The next issue is whether the duplex comes within the provisions of IC 6–1.1–10–16, since that is the section on which the Petitioner originally based its claim for exemption.

As stated by the hearing officer, "[t]he property itself falls within the purview of both sections, Section 16 being the edu-

---

1. The Respondent raises an issue with regard to the filing of an affidavit as required under IC 6–1.1–10–21(b). Since the original claim for exemption did not rely on IC 6–1.1–10–21, such an affidavit was not required originally. Since the other half of the duplex was granted an exemption without the affidavit having been apparently filed, the Respondent has waived the requirement of the affidavit. In any event, the affidavit provisions of subsection (b) are not dispositive of the issue in this case.

cational, charitable, literary, and scientific section." Transcript at 93. The hearing officer further stated that he had "look[ed] at the entire property under the realm of subchapter 10." [2] *Id.* Neither the hearing officer's report and recommendation filed with the Respondent, nor the final determination of Respondent makes any recommendation as to the applicability of IC 6-1.-1-10-16. There was substantial evidence presented at the trial which suggests that the duplex may fall within the provisions of IC 6-1.1-10-16. The court assumes that the same evidence was presented at the administrative hearing since there was no objection to the testimony at trial. In *State Board of Tax Commissioners v. Wright* (1966), 139 Ind.App. 370, 215 N.E. 2d 57, the court found that cabins used for temporary housing of clergy and lay persons were exempt as the only purpose and use for the cabins was shown to be religious. Likewise in construing the statutes which were forerunners to the statutes pertinent in the case at bar, the court in *Wright* said that because the buildings did not qualify as parsonages did not mean that they could not find haven in another section. *Wright,* 215 N.E.2d at 64.

This cause is remanded to the Respondent for further hearing and determination as to the applicability of IC 6-1.1-10-16.

---

**2.** "Subchapter 10" is not a reference which the Court recognizes. The Court presumes the witness meant Chapter 10 of Article 1.1 of Title 6 of the Indiana Code.